UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

DAN BROWN,

    Plaintiff,

v.                                          Civil Action No. 2:15-cv-11549

ROBERT BELT, Deputy Sheriff;
GARRETT SAMPLES, JR., Clay County Sheriff; and
CLAY COUNTY COMMISSION,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Dan Brown, a resident of Clay County, West Virginia, was arrested for driving under the influence after he failed three field sobriety tests.  Alleging that he was not given proper accommodations during the test administration, Brown brings claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, claims for negligent hiring, supervision and training, claims under the Fourth and Fourteenth Amendments of the United States Constitution, and state law claims for wrongful arrest and intentional infliction of emotional distress.  Pending before the court are defendants' motion to dismiss, filed March 29, 2016 (ECF No. 10), and defendants' motion to deem the motion to dismiss as unopposed (ECF

No. 21) inasmuch as plaintiff has failed to respond to the motion to dismiss.

As an initial matter, the court denies defendants' motion to deem the motion to dismiss as unopposed. Plaintiff's subsequent motion for leave to amend, while dilatory, contains allegations that purportedly show plaintiff's continued intent to maintain the action.

## I. Facts as Alleged

Taking plaintiff's allegations as true, as the court must at this stage, on July 26, 2013, defendant Robert Belt, a deputy sheriff of Clay County, saw Mr. Brown on the side of the road with a flat tire. Deputy Belt then approached him and began to conduct a traffic stop for driving under influence ("DUI") and search his vehicle. When Deputy Belt ordered Mr. Brown to undergo three field sobriety tests, the "Horizontal Gaze Nystagmus," the "Walk and Turn," and the "One-Leg Stand," Mr. Brown pointed out that he suffered from several conditions that prevented him from being able to adequately complete the tests. In particular, he has long had nystagmus, an eye condition, as well as a leg injury that makes him unable to place weight on his leg. Although Mr. Brown told Deputy Belt that he was "100% disabled" and "could not take the normal tests for DUI," Belt continued to administer the three tests without offering accommodations. Following the tests, Deputy Belt arrested Mr. Brown for DUI.

2

When Mr. Brown took a preliminary breath test, the result showed a blood alcohol level of 0.0. He asked to be given a blood test to provide further proof that he was not under the influence, but Deputy Belt failed to request it.

## II. Procedural posture

On July 27, 2015, plaintiff filed his complaint with the court. The complaint contains five "causes of action" which the court treats as Counts 1 through 5, namely, Count 1, failure to provide reasonable accommodation under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act; Count 2, negligent hiring, supervision, and/or training; Count 3, the Fourth and Fourteenth Amendment due process violations; Count 4, wrongful arrest; and Count 5, intentional infliction of emotional distress. As noted, plaintiff did not file a response to the motion to dismiss, but on September 15, 2016 filed a motion seeking leave to amend, along with a proposed amended complaint. The court considers that motion in a separate order.

## III. Standard of review

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing ... entitle[ment] to relief." Rule 12(b)(6) permits a defendant to challenge a complaint when it "fail[s] to state a claim upon

which relief can be granted." In order to survive a motion to dismiss, a complaint "must contain enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a valid complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Rios v. Veale, 648 F. App'x 369, 370 (4th Cir. 2016) (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007)). In Rios, the Fourth Circuit admonishes that with "a civil rights complaint, we must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Rios, 648 F. App'x at 370 (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

Accordingly, a complaint may only be dismissed if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Green v. Beck, 539 F. App'x 78, 79 (4th Cir. 2013) (quoting Edwards, 178 F.3d 231, 244 (4th Cir. 1999)).

IV. Analysis

**Count 1: Claims for failure to provide reasonable accommodations under the ADA and the Rehabilitation Act**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). While the complaint does not allege that the Commission received federal funds, the court has no reason to doubt it, and the defendants did not raise it as an issue.

In general, a plaintiff seeking recovery for violation of either statute must allege that (1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of

5

his disability. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005) (citations omitted). The scope of ADA protections extends to arrests and police activity more generally. Seremeth v. Bd. of Cty. Comm'rs Frederick Cty., Md., 673 F.3d 333, 338-39 (4th Cir. 2012) (citing, inter alia, Johnson v. City of Saline, 151 F.3d 564, 569 (6th Cir. 1998), for the proposition that "the phrase 'services, programs, or activities' encompasses virtually everything that a public entity does").

The two statutory provisions allegedly implicated here are similar for present purposes, and the court considers them together. "Claims under ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is 'substantially the same.'" Seremeth, 673 F.3d at 336 n.1 (citation omitted).

Defendants attack the sufficiency of the complaint under these two acts on two principal grounds, which the court considers in turn: (1) that plaintiff did not adequately plead a qualifying disability and (2) that he was not unlawfully denied unreasonable accommodation.

### i. Pleading a qualifying disability

The ADA defines "disability" as:

a) a physical or mental impairment that substantially limits one or more major life activities of such individual;

b) a record of such an impairment; or

c) being regarded as having such an impairment.

42 U.S.C. §12102.

Under the first prong, Brown does not expressly plead substantial limitation of a major life activity. Nonetheless, his statement to the officer that he was "100% disabled" suffices at the motion to dismiss stage to indicate substantial limitations of major life activities.

In this context, Brown names several "impairments," including nystagmus and a leg injury. To be sure, the allegations are rather summary. However, in this matter of statutory interpretation, the court is bound to faithfully execute the Congressional intent underlying the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553. Specifically responding to a perceived judicial narrowing of the disability definition under the ADA, Congress instructed us to construe the definition of disability "in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms." Summers v. Altarum Inst., Corp., 740 F.3d 325, 329 (4th Cir. 2014) (quoting 42 U.S.C. § 12102(4)(A)). The cases

7

defendants cite predate the ADAAA. The court finds plaintiff's pleading of a qualifying disability to be adequate.

### ii. Denial of reasonable accommodation

It is well-established law that one can plead a Title II violation arising out of a police investigation or arrest. Indeed, courts recognize two types of claims under Title II: 1) wrongful arrest, where a suspect is arrested based on his disability, rather than for criminal activity; and 2) reasonable accommodation, where police "fail to reasonably accommodate [a suspect's] disability during the investigation or arrest." See Waller ex rel. Estate of Hunt v. City of Danville, 556 F.3d 171, 174 (4th Cir. 2009) (citations omitted).

It may be deemed that both types of claims are alleged by plaintiff. First, he informed Deputy Belt that on account of his disability, he could not take the field sobriety tests, yet was offered no accommodations, and was subsequently arrested by virtue of his disability, rather than criminal liability. Second, once arrested, the officer failed to reasonably accommodate his disability by providing the blood test he allegedly requested to show that he was not an impaired driver.

While factual development in this case may not support the reasonable accommodations allegations, the motion to dismiss Count 1 must at this juncture be denied.

**Count 2: Negligent hiring, supervision, and training**

Plaintiff's second cause of action alleges that Clay County Commission and Sheriff Samples failed to properly train or supervise Deputy Belt. Specifically, Deputy Belt allegedly did not receive training on the ADA or the provision of reasonable accommodations to disabled persons in the course of his thirteen-year tenure with the Clay County Sheriff's Department. The Clay County Commission is alleged to have failed to properly fund training on the ADA. Together, these failures allegedly created an environment of indifference and disrespect for the rights of persons with disabilities.

The training and supervision claims blend together. While the Fourth Circuit has not yet recognized such claims under the ADA, the court agrees that "there is no indication that it would not follow other courts and recognize such a claim." Estate of Saylor v. Regal Cinemas, Inc., 54 F. Supp. 3d 409, 426 (D. Md. 2014). Another court in our circuit recently acknowledged, in dicta, that the failure-to-train "claim appears to be legally appropriate in some circumstances." Talley v. City of Charlotte, No. 3:14-cv-00683-MOC-DCK, 2016 WL 8679235, at *10 n. 3 (W.D.N.C. July 22, 2016). As a recent study noted, "Several courts acknowledge that law enforcement can violate reasonable accommodation requirements by inadequately training officers in

how to interact with people with disabilities. . . . [T]he ADA's legislative history clearly requires adequate police training." Robyn Levin, Note, <u>Responsiveness to Difference: ADA Accommodations in the Course of Arrest</u>, 69 Stan. L. Rev. 269, 295, 298 (2017). A House of Representatives Judiciary Committee report on the ADA indeed reads:

> In order to comply with the non-discrimination mandate, it is often necessary to provide training to public employees about disability. For example, persons who have epilepsy, and a variety of other disabilities, are frequently inappropriately arrested and jailed because police officers have not received proper training in the recognition of and aid [for] seizures. Such discriminatory treatment based on disability can be avoided by proper training.
>
> <u>Patrice v. Murphy</u>, 43 F. Supp. 2d 1156, 1159 (W.D. Wash. 1999) (quoting H.R. Rep. No. 101-485, pt. III, at 50 (1990), as reprinted in 1990 U.S.C.C.A.N. 267, 473).

It is therefore plain that training was a key instrumentality that Congress intended to be employed to promote compliance with the ADA. This being so, the claim is stated.

The count's caption notwithstanding, Brown's complaint pleads no factual allegations relating to "negligent hiring," so that prong of the cause of action is dismissed.

Defendants are correct that a Title II action does not lie against Sheriff Samples in his individual capacity. <u>See</u> <u>Spencer v. Earley</u>, 278 Fed. App'x 254, 257 (4th Cir. 2008). They also assert immunity for the Clay County Commission under W. Va. Code 29-12A-5(a), which reads in pertinent part,

> A political subdivision is immune from liability if a
> loss or claim results from:
> [ ]
> (4) Adoption or failure to adopt a law, including, but
> not limited to, any statute, charter provision,
> ordinance, resolution, rule, regulation or written
> policy;
>
> (5) Civil disobedience, riot, insurrection or rebellion
> or the failure to provide, or the method of providing,
> police, law enforcement or fire protection.
> W. Va. Code Ann. § 29-12A-5 (West).

However, defendants do not explain why, in their view, this state legislative provision should encompass the present federal statutory claims, and the court is reluctant to dismiss the claims at this stage without such a showing. Under the Supremacy Clause of the United States Constitution, federal law supersedes contrary state law, and the court is not aware of any invocation of § 29-12A-5 immunity from federal causes of action.

Accordingly, the motion to dismiss is denied as to the negligent supervision and training claims.

## Count 3: Violation of due process under the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983

Mr. Brown asserts that he was arrested, seized, and searched without any reasonable suspicion, and relatedly, that Deputy Belt's failure to provide reasonable accommodation or alternative DUI testing resulted in his arrest and detainment. Plaintiff alleges that these circumstances "led to the officer

violating the Due Process rights of the Plaintiff under the 4th and 14th Amendments. . ." As discussed, at this early stage of the litigation, the court has to take the factual allegations in the complaint as true, but need not credit its legal assertions.

Any pleading of a violation under Section 1983 has to overcome the qualified immunity defense. It is well established that government officials performing discretionary functions — such as Deputy Belt – are entitled to qualified immunity from liability for damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800 (1982), 818. Analytically, determining whether an official is entitled to qualified immunity involves a two-pronged inquiry: "first whether a constitutional violation occurred and second whether the right violated was clearly established." Melgar v. Greene, 593 F.3d 348, 353 (4th Cir. 2010). Importantly, the qualified immunity inquiry is a highly fact-specific one. See Saucier v. Katz, 553 U.S. 194, 200 (2001).

Having encountered the driver with his vehicle on the side of the road with a flat tire, it would be obvious to anyone why the vehicle was stationary at that point. While the officer would be expected to speak to the driver, the reasonable suspicion basis on which the officer directed the driver to submit to

12

sobriety tests is not apparent from the complaint. That is particularly so when the preliminary breath test administered to the driver was zero for alcohol. The action of the officer in this instance is further complicated by the reasonable accommodation factual issue that is incorporated in and specifically made a part of Count 3.

In this case, the court does not have any showing of a particularized basis for prolonging the encounter and administering the sobriety tests over Mr. Brown's protestations. Therefore, the court cannot now say, as a matter of law, that Deputy Belt's decision to engage in such conduct, and the ensuing consequences, were not outside the boundaries of clearly established law. See Green v. Throckmorton, 681 F.3d 853, 863 (6th Cir. 2012). Accordingly, the motion to dismiss is denied as to Count 3.

## Count 4: Wrongful arrest

Plaintiff's fourth cause of action asserts simply: "As a result of the Defendant, Robert Belt's actions or omissions, the Plaintiff was wrongfully suspected and arrested for DUI." The one-year statute of limitations found in W. Va. Code § 55-2-12(c) (2000) controls a claim for false arrest. Canterbury v. Laird, 221 W. Va. 453, 455, 655 S.E.2d 199, 201 (2007). The arrest took

place on or about July 26, 2013, and the complaint was filed on July 27, 2015. Accordingly, the claim is time-barred, and the motion to dismiss is granted as to this cause of action.

**Count 5: Intentional infliction of emotional distress/outrage**

Plaintiff's fifth cause of action asserts simply that the defendants' conduct was "intentional, extreme and outrageous," and that it caused plaintiff to suffer "severe emotional and mental distress." The elements of a claim for intentional or reckless infliction of emotional distress are:

1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;

2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;

3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and

4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Philyaw v. E. Associated Coal Corp., 219 W. Va. 252, 257 (2006).

Courts are to play a "gate-keeping" role in determining whether, as a matter law, asserted conduct could reasonably satisfy the element of "atrocious, intolerable, and so extreme and

outrageous." Id. Conduct which is merely "unreasonable, unkind, or unfair" is insufficient to state a claim for intentional infliction of emotional distress. See id. at 258. Crediting fully the allegations in plaintiff's complaint, and drawing all inferences in his favor, the plaintiff has alleged conduct that, while unkind and perhaps unfair, was not atrocious, intolerable or so exceeding the bounds of decency as to state a claim for intentional infliction of emotional distress. The claim is dismissed.

V. Conclusion

For the foregoing reasons, the court ORDERS that defendants Robert Belt, Garrett Samples, Jr., and Clay County Commission's motion to dismiss be, and it hereby is, granted in part and denied in part. In particular, the court dismisses the negligent hiring prong of Count 2 and all of Count 4, wrongful arrest, and Count 5, intentional infliction of emotional distress/outrage, but does not dismiss any other claims at this juncture. Defendants' motion to deem the motion to dismiss as unopposed is, as earlier noted, denied.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: October 13, 2017

John T. Copenhaver, Jr.
United States District Judge

15