UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


DAN BROWN,

        Plaintiff,

v.                           Civil Action No. 2:15-cv-11549

ROBERT BELT, Deputy Sheriff,
Clay County Sheriff's office;
GARRETT SAMPLES, JR., Sheriff,
Clay County Sheriff's Office;
TYLER CARUTHERS, Deputy Sheriff,
Clay County Sheriff's Office; CLAY
COUNTY COMMISSION; COLONEL C.R. "JAY"
SMITHERS, Superintendent, WV State
Police; STEVEN DEMASKE, Trooper, WV
State Police; and TYLER DANA MCFEELEY,
Trooper, WV State Police,

        Defendants.


## MEMORANDUM OPINION AND ORDER


        Pending is defendants Tyler Dana McFeeley ("Trooper McFeely") and C.R. "Jay" Smithers's ("Colonel Smithers") (collectively, the "State Defendants") motion to dismiss, filed June 5, 2018.  A third state defendant, Trooper Steven Demaske, is not shown to have been served with process and has not appeared.

        Also pending is the State Defendants' motion to designate their motion to dismiss as unopposed and dismiss

plaintiff's claims for failure to prosecute, filed July 30, 2018, which motion is denied as moot, as hereinafter noted.

## I.    Facts as Alleged

Plaintiff Dan Brown is a resident of Clay, West Virginia. First Am. Compl. ("Compl.") ¶ 4. On July 26, 2013, defendant Deputy Robert Belt, a deputy sheriff of Clay County, West Virginia saw Mr. Brown on the side of the road with a flat tire. Id. ¶ 10. Deputy Belt then approached Mr. Brown, allegedly without any reasonable suspicion, began to conduct a traffic stop for driving under the influence ("DUI") and searched his vehicle. Id. ¶ 11. Mr. Brown alleges that Deputy Belt caused the blowout of his tire that resulted in the officer pulling him over, id. ¶ 33, and that Deputy Belt knew of Mr. Brown's whereabouts due to information obtained from Shonda Tanner, a mutual acquaintance, id. ¶¶ 30-33. When Deputy Belt ordered Mr. Brown to undergo three field sobriety tests, the "Horizontal Gaze Nystagmus," the "Walk and Turn," and the "One-Leg Stand," Mr. Brown pointed out that he suffered from several physical disabilities that prevented him from being able to adequately complete the tests. Id. ¶¶ 12-17. In particular, he has long had nystagmus, an eye condition, as well as a leg injury that makes him unable to place weight on his leg. Id. ¶¶

2

15-16.  Mr. Brown has been determined by the United States
Social Security Administration to be fully disabled.  Id. ¶ 25.
Although Mr. Brown told Deputy Belt that he was "100% disabled"
and "could not take the normal tests for DUI," Deputy Belt
continued to administer the three tests without offering
accommodations.  Id. ¶¶ 12, 21.  Following the tests, Deputy
Belt arrested Mr. Brown for DUI.  Id. ¶ 21.

Mr. Brown did take a preliminary breath test, and the
result showed a blood alcohol level of 0.0.  Id. ¶ 18.  He asked
to be given a blood test to provide further proof of his
sobriety, but Deputy Belt failed to request or administer one.
Id. ¶¶ 19-20.

The DUI charge was later dismissed, and when Mr. Brown
contested the revocation of his driver's license in an
administrative hearing, Deputy Belt admitted to being negligent
when filling out the DUI information sheet.  Id. ¶¶ 22-23.  Also
at this hearing, Deputy Belt is said to have stated that he had
never received training on compliance with the Americans with
Disabilities Act ("ADA") or on how to provide reasonable
accommodations to disabled individuals whose disability impairs
their ability to pass field sobriety tests.  Id. ¶ 23.

Over a year and a half after the July 2013 incident,
on or about February 20, 2015, Mr. Brown reported a robbery of

over $40,000 worth of tools from his property. Id. ¶¶ 26-27.
Deputy Belt responded to Mr. Brown's call to the authorities yet
did not file a police report or investigate the robbery. Id. ¶¶
26-27. Because Deputy Belt did not file a police report, Mr.
Brown's insurance claim was made more difficult to support. Id.
¶¶ 28-29. Additionally, the tools were never recovered. Id. ¶
29. Mr. Brown believes this failure to investigate to be
retaliation for the original DUI charge being dismissed. Id. ¶
26.

On May 22, 2015, Mr. Brown was once again arrested for
DUI. Id. ¶ 36. Mr. Brown alleges on good faith information and
reasonable belief that Deputy Belt communicated to members of
the West Virginia State Police to "target" the plaintiff and
charge him with DUI. Id. ¶ 35. West Virginia State Troopers
Huff, Tallman and defendant Demaske were the arresting officers
for charges of DUI, left of center driving, and no proof of
insurance. Id. ¶ 36. Mr. Brown informed the officers of his
disability and subsequently failed the three standard field
sobriety tests. Id. ¶¶ 64, 67. He later took a breath test
which revealed that he had a blood alcohol level of 0.0. Id. ¶
65. All three charges were later dismissed after the officers
failed to appear or present any proof of impairment. Id. ¶ 37.

On January 15, 2016, Mr. Brown called the police to
report a man invading his home and battering him.  Id. ¶ 38.
Defendant Trooper McFeeley, a West Virginia State Trooper,
responded to the call and arrested Mr. Brown for burglary,
destruction of property, and providing false information to the
state police, all without prosecuting the alleged crimes that
Mr. Brown called to report.  Id. ¶ 39.  Mr. Brown asserts that
this arrest was in retaliation for filing the original complaint
in this lawsuit on July 27, 2015 against defendants Deputy Belt,
Clay County Sheriff Garrett Samples, Jr., and the Clay County
Commission ("the Commission").  Id. at 21-22.

Later, on July 5, 2016, Mr. Brown was driving in
downtown Clay when he was in a minor car accident.  Id. ¶ 43.
Deputy Belt responded to the accident along with Deputy Tyler
Caruthers, a fellow Clay County deputy sheriff.  Id. ¶ 44.  They
conducted DUI field sobriety tests and charged Mr. Brown with
DUI.  Id. ¶¶ 44-45, 48.  Mr. Brown had informed the deputies
that he was physically unable to pass the field sobriety tests,
yet the officers continued to conduct the same three field
sobriety tests as had been conducted by Deputy Belt at a
previous stop.  Id. ¶¶ 47-48, 67.  Mr. Brown participated in a
breath test which again showed that he had a blood alcohol level
of 0.0.  Id. ¶ 65.  Mr. Brown admitted to taking his daily

prescription medications but also stated that no one had ever told him they might impair his ability to drive. Id. ¶ 49. Mr. Brown requested a blood test to prove that he had only taken his prescribed medications, but the officers refused. Id. ¶ 50. Upon arriving at the police station, Mr. Brown was taken to a dark closet and held there for approximately four hours while waiting for an expert from the Charleston, West Virginia detachment who was to conduct specialized testing of the plaintiff. Id. ¶¶ 46, 51-52. During that time, he was placed under a "red light" for further testing of impairment. Id. ¶ 52. This treatment triggered a migraine, and the officers would not allow Mr. Brown to take his medication to alleviate it. Id. This charge for DUI was still pending as of plaintiff's filing of his motion to amend the complaint on September 15, 2016. Id. ¶ 54.

On July 23, 2016, Trooper McFeeley arrested Mr. Brown for another burglary. Id. ¶ 53. Mr. Brown claims that upon arrest, Trooper McFeeley elected not to believe Mr. Brown's story regarding the incident and that the officer's choice was motived by retaliatory intent for the filing of this lawsuit on July 27, 2015. Id. ¶¶ 105, 151

On July 27, 2015, plaintiff filed his original complaint with the court against Deputy Belt, Sheriff Samples, and the Commission for the actions taken by Deputy Belt during the July 26, 2013 DUI arrest.  The complaint contained five "causes of action" which the court treated as Counts 1 through 5, namely, Count 1, failure to provide reasonable accommodation under Title II of the ADA, 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794; Count 2, negligent hiring, supervision, and/or training; Count 3, Fourth and Fourteenth Amendment due process violations; Count 4, wrongful arrest; and Count 5, intentional infliction of emotional distress ("IIED"). On October 13, 2017, the court ruled on the joint motion to dismiss of Deputy Belt, the Commission and Sheriff Samples, the only defendants then charged in the complaint.  ECF No. 26. Pursuant to that motion, the court dismissed the negligent hiring prong of Count 2 and all of Counts 4 (wrongful arrest) and 5 (IIED) but did not dismiss any other claims.  Id. at 15.

On September 15, 2016, the plaintiff filed for leave to amend the complaint.  The court granted the motion on March 30, 2018, and the First Amended Complaint with the named defendants as set forth in the case caption above was deemed filed on that same day, thereby adding as defendants Deputy

Caruthers, Trooper Demaske, Trooper McFeeley, Colonel Smithers and Magistrate Jeffrey Boggs. The court at the same time ordered that the negligent hiring claim, now in Count 4, be dismissed; that the July 26, 2013 action for wrongful arrest against Deputy Belt, now in Count 6, was time barred due to the one-year statute of limitations and was dismissed; and that Magistrate Boggs, named in several counts, be dismissed from the action. ECF No. 29, at 6.

In the plaintiff's First Amended Complaint, he asserts for the first time claims against Trooper McFeeley and Colonel Smithers. He also alleges claims against the West Virginia State Police, not named as a party to this action and for whom the plaintiff has not issued a summons. Accordingly, the court does not address claims against that entity, but does treat the reference to the West Virginia State Police as an indication that the named state defendants are being sued in their official capacity. As noted, the plaintiff also asserts claims against Trooper Steven Demaske and issued summons to him on April 19, 2018, but there is no proof that service has been perfected.

The First Amended Complaint raises sixteen "causes of action," which the court treats as Counts 1 through 16. One or more of Trooper Demaske, Trooper McFeeley or Colonel Smithers is the subject of the following ten counts: Count 2, failure to

provide reasonable accommodations under Title II of the ADA and § 504 of the Rehabilitation Act during the second DUI traffic stop, on May 22, 2015, against Trooper Demaske, Colonel Smithers, a supervising officer of the West Virginia State Police, and naming the West Virginia State Police; Count 4, negligent supervision and/or training arising from the May 22, 2015 DUI arrest against Colonel Smithers and naming the West Virginia State Police; Count 5, violation of Due Process Rights under the Fourth, Fifth, and Fourteenth Amendments of the Constitution under 42 U.S.C. § 1983 arising from the May 22, 2015 DUI arrest against Colonel Smithers, Trooper Demaske and naming the West Virginia State Police; Count 7, wrongful arrest for DUI on May 22, 2015 against Trooper Demaske; Count 8, wrongful arrest for burglary, destruction of property and providing false information to state police on January 15, 2016 against Trooper McFeeley; Count 10, wrongful arrest for burglary on July 23, 2016 against Trooper McFeeley; Count 12, retaliation claim under the First and Fourteenth Amendments and 42 U.S.C. § 1983 for "targeting" Mr. Brown in the DUI arrest on May 22, 2015 against Trooper Demaske, Colonel Smithers and naming the West Virginia State Police; Count 13, retaliation claim under the First and Fourteenth Amendments and 42 U.S.C. § 1983 for wrongful arrest for burglary, destruction of property, and providing false information to state police on January 15, 2016

against Trooper McFeeley; Count 15, retaliation claim under 42 U.S.C. § 1983 for wrongful arrest for burglary on July 23, 2016 against Trooper McFeeley, Colonel Smithers and naming the West Virginia State Police; and Count 16, intentional infliction of emotional distress/outrage against all State Defendants for all of the allegations contained in the First Amended Complaint against them.

The State Defendants filed, on June 5, 2018, a motion to dismiss the claims against them in the First Amended Complaint, and later, on June 11, 2018, Deputy Belt, Deputy Caruthers, Sheriff Samples and the Commission (collectively, the "County Defendants") did the same. The plaintiff did not initially respond to these motions, but the court ordered him to file a response by a certain date, which he failed to do. Ultimately, the plaintiff filed his response, which the court permitted and each group of defendants filed their own reply.

Regarding the State Defendants' motion to dismiss and supporting memorandum, the court notes in particular the confusing language in the abbreviated motion to dismiss as set forth in the phrase: "Plaintiff's claims are barred by the applicable statute of limitations and inapplicable to Defendants Smithers and McFeeley." Defs. Smithers & McFeely's Mot. Dismiss, ECF No. 36, at 1 (underlining supplied). Additionally,

in their memorandum in support of their motion to dismiss, the State Defendants attempt to "incorporate by reference the Motion to Dismiss arguments of any co-defendants to the extent that those argument[s] apply to Plaintiff's claims against all Defendants."  Defs. Smithers & McFeely's Mem. Supp. Mot. Dismiss ("State Defs.' Mem."), ECF No. 37, at 16 n.3.  The court declines to consider any such later-filed County Defendant arguments that were merely, at best, imagined at the time of the filing of the State Defendants' motion to dismiss.  Accordingly, the court will only evaluate the arguments actually made in the State Defendants' briefings in support of their motion to dismiss.

Before plaintiff filed his response to the motions to dismiss, Colonel Smithers and Trooper McFeeley filed a motion to designate their motion to dismiss as unopposed and to dismiss plaintiff's claim for failure to prosecute.  ECF No. 49. Inasmuch as the court granted plaintiff's motion to extend the time for him to file a response, ECF No. 51, an order with which the plaintiff eventually complied, this motion is moot.

### III. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim

showing . . . entitle[ment] to relief." Fed. R. Civ. P.
8(a)(2); **Erickson v. Pardus**, 127 S. Ct. 2197, 2200 (2007).  Rule
12(b)(6) correspondingly permits a defendant to challenge a
complaint when it "fail[s] to state a claim upon which relief
can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

     The required "short and plain statement" must provide
"'fair notice of what the . . . claim is and the grounds upon
which it rests.'"  **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544,
545 (2007) (quoting **Conley v. Gibson**, 355 U.S. 41, 47 (1957),
**overruled on other grounds**, **Twombly**, 550 U.S. at 563); **see also**
**Anderson v. Sara Lee Corp.**, 508 F.3d 181, 188 (4th Cir. 2007).
In order to survive a motion to dismiss, "a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"  **Ashcroft v.**
**Iqbal**, 129 S. Ct. 1937, 1949 (2009) (quoting **Twombly**, 550 U.S.
at 570); **see also** **Monroe v. City of Charlottesville**, 579 F.3d
380, 386 (4th Cir. 2009).

     Application of the Rule 12(b)(6) standard requires
that the court "'accept as true all of the factual allegations
contained in the complaint . . . .'"  **Erickson**, 127 S. Ct. at
2200 (quoting **Twombly**, 127 S. Ct. at 1965); **see also** South
Carolina Dept. Of Health And Environmental Control v. Commerce
and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004)

(quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).
The court must also "draw[] all reasonable . . . inferences from
th[e] facts in the plaintiff's favor . . . ." <u>Edwards v. City
of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

IV.   Discussion

A. Statute of Limitations

1. Effect of Granting the Motion to Amend the Complaint

Colonel Smithers and Trooper McFeeley argue that the
claims asserted against them in Counts 2, 4, 5, 8, 12, 13, and
certain claims in Count 16 should be dismissed because those
claims are barred by the applicable statute of limitations
periods.  State Defs.' Mem., ECF No. 37, at 5-9.  The claims to
which the statute of limitations defense is being raised arise
from the arrests of Mr. Brown on May 22, 2015 by Trooper Demaske
and January 15, 2016 by Trooper McFeeley.[1]

Here, the plaintiff moved to amend his complaint to
include these claims against the State Defendants on September

---

[1] The plaintiff offers no response to the statute of limitations
claims other than to suggest that the statute of limitations
periods (it is unspecified which ones) should be tolled until
all of the underlying criminal charges against him are
dismissed.  Pl.'s Resp., ECF No. 53, at 11.

15, 2016, and filed as an attachment to that motion, his First Amended Complaint. ECF No. 23. The court granted the plaintiff's motion on March 30, 2018 with the above-enumerated exceptions set forth at page 8 and instructed the Clerk to file the First Amended Complaint as of that date. ECF Nos. 29, 30.

The Court of Appeals for the Fourth Circuit has noted that "courts have generally concluded that when a motion for leave to amend is later granted, the amended complaint is deemed timely even if the court's permission is granted after the limitations period ends." <u>Angles v. Dollar Tree Stores, Inc.</u>, 494 F. App'x 326, 330 (4th Cir. 2012). In support of this contention, the court in <u>Angles</u> cited an opinion of the Eighth Circuit which noted:

> where the petition for leave to amend the complaint
> has been filed prior to expiration of the statute of
> limitations, while the entry of the court order and
> the filing of the amended complaint have occurred
> after the limitations period has expired. . . . the
> amended complaint is deemed filed within the
> limitations period.

<u>Mayes v. AT & T Info. Sys.</u>, Inc., 867 F.2d 1172, 1173 (8th Cir. 1989) (citing <u>Rademaker v. E.D. Flynn Export Co.</u>, 17 F.2d 15, 17 (5th Cir. 1927); <u>Longo v. Pa. Elec. Co.</u>, 618 F.Supp. 87, 89 (W.D. Pa. 1985), <u>aff'd</u>, 856 F.2d 183 (3d Cir. 1988); <u>Eaton Corp. v. Appliance Valves Co.</u>, 634 F. Supp. 974, 982–83 (N.D. Ind. 1984), <u>aff'd on other grounds</u>, 790 F.2d 874 (Fed. Cir. 1986);

Gloster v. Pa. R.R., 214 F.Supp. 207, 208 (W.D. Pa. 1963)).  The

Angles court also cited a Seventh Circuit opinion which stated:

> As a party has no control over when a court renders
> its decision regarding the proposed amended complaint,
> the submission of a motion for leave to amend,
> properly accompanied by the proposed amended complaint
> that provides notice of the substance of those
> amendments, tolls the statute of limitations, even
> though technically the amended complaint will not be
> filed until the court rules on the motion.

Moore v. Indiana, 999 F.2d 1125, 1131 (7th Cir. 1993).

Accordingly, the court finds that, for purposes of the

statutes of limitations, the amended complaint is deemed filed

as of September 15, 2016.


2. The Applicable Limitations Periods


Regarding plaintiff's ADA claims, the Fourth Circuit

has found:

> Because Title II of the ADA does not contain a statute
> of limitations, federal courts "borrow the state
> statute of limitations that applies to the most
> analogous state-law claim." A Soc'y Without A Name v.
> Virginia, 655 F.3d 342, 347 (4th Cir. 2011).  Although
> "the most analogous statute need not be identical,"
> state legislation containing a statute of limitations
> will only control if it provides substantially "the
> same rights and remedies" as the ADA.  Wolsky v. Med.
> Coll. of Hampton Roads, 1 F.3d 222, 224–25 (4th Cir.
> 1993). . . .  Given the substantially similar language
> between the ADA and the Rehabilitation Act . . . we
> have applied the same analysis to determine the
> applicable statute of limitations for Rehabilitation
> Act claims.

<u>Semenova v. Md. Transit Admin.</u>, 845 F.3d 564, 567 (4th Cir. 2017).  A court in the Northern District of West Virginia has found, and this court agrees, that "the West Virginia Human Rights Act [WVHRA] is the most analogous West Virginia law to the Americans with Disabilities Act, and it is fully consistent with the Act and its underlying policies"[2] and that the WVHRA has a two year statute of limitations found at West Virginia Code § 55-2-12.[3]  <u>Roe v. Cty. Commm'n of Monongalia Cty.</u>, 926 F. Supp. 74, 78 (N.D.W. Va. 1996).  The court concludes that the ADA claims are subject to a two-year limitations period.

Section 1983 claims are subject to the limitations period applied by the forum state to personal injury actions. <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985); <u>see</u> <u>also</u> <u>Owens v.</u>

---

[2] **The WVHRA provides that "equal opportunity in . . . public accommodations is hereby declared to be a human right or civil right of all persons without regard to . . . disability."  W. Va. Code 5-11-2.  Title II of the ADA and § 504 of the Rehabilitation Act similarly state that no person with a disability should be discriminated against by a public entity on the basis of that disability.  <u>See</u> 42 U.S.C. § 12132; 29 U.S.C. § 784(a).**
[3] **"Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) <u>within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries</u>; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."  W. Va. Code § 55-2-12 (emphasis added).**

Okure, 488 U.S. 235, 240 (1989) (holding that "where a state has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions"). In West Virginia, Section 1983 claims are subject to the two-year period set forth in West Virginia Code § 55-2-12.  See, e.g., Sattler v. Johnson, 857 F.2d 224, 226-27 (4th Cir. 1988); Bell ex rel. Bell v. Bd. of Educ. of Cty. of Fayette, 290 F. Supp. 2d 701, 709-10 (S.D.W. Va. 2003).

Regarding plaintiff's state law claims for negligent supervision and training, under West Virginia law, "claims in tort for negligence, professional negligence, and misrepresentation (fraudulent or negligent) are governed by a two-year statute of limitation."  Trafalgar House Constr., Inc. v. ZMM, Inc., 211 W. Va. 578, 583, 567 S.E.2d 294, 299 (2002) (citing W. Va. Code 55-2-12).

Plaintiff's state law claims for wrongful arrest are subject to a one-year statute of limitations under West Virginia law.  See Canterbury v. Laird, 221 W. Va. 453, 455, 655 S.E.2d 199, 202 (2007) ("[O]ne year statute of limitations found in W. Va. Code § 55-2-12(c) . . . controls a claim for false arrest.").

Finally, the IIED claims against the State Defendants have a two-year statute of limitations period.  <u>Richards v. Walker</u>, 813 S.E.2d 923, 930 (W. Va. 2018) ("The statute of limitations for a claim of intentional infliction of emotional distress is two years.").

Here, the State Defendants' argument that those claims were raised outside the applicable statute of limitations is based on the date the court granted the motion to amend and the date the First Amended Complaint was filed, March 30, 2018.  The date on which the analysis should have been grounded is September 15, 2016.

The ADA, § 1983, negligent supervision and training, and IIED claims arising out of the May 22, 2015 arrest and set forth in Counts 2, 4, 5, 12 and 16, were filed within the two-year periods.  The § 1983 and IIED claims arising from the January 15, 2016 arrest and set forth in Counts 13 and 16 have a two-year limitations period and the wrongful arrest claim set forth in Count 8 has a one-year statute of limitations, and the motion to amend the complaint was filed within both of those periods.  It further appears to the court that the § 1983 and IIED claims arising out the July 23, 2016 arrest and set forth in Counts 15 and 16 have a two-year limitations period and the wrongful arrest claim set forth in Count 10 has a one-year

limitations period, and the motion to amend the complaint was filed within those periods.[4]

Accordingly, each of the State Defendants' statute of limitations defenses is denied.

## B. Failure to State a Claim

The State Defendants move to dismiss, for failure to state a claim upon which relief may be granted, Counts 10 (wrongful arrest) and 15 (retaliation under § 1983), each of which arises out of plaintiff's arrest by Trooper McFeeley on July 23, 2016, as well as Count 16 (IIED) insofar as it arises out of that same arrest. State Defs.' Mem., ECF No. 37, at 10-13.

---

[4] The court notes that wrongful arrest has a statute of limitations of one year in West Virginia and that Trooper Demaske might be able to assert such a defense to Count 7 (wrongful arrest on May 22, 2015) once he is served with process. However, the Fourth Circuit has stated that a district court may only address a statute of limitations defense, *sua sponte*, in narrow circumstances such as when that defense plainly appears on the face of either a petition for habeas corpus or a complaint filed in forma pauperis. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 (4th Cir. 2006).

1. Count 10 (wrongful arrest against Trooper McFeeley)


As grounds for his tenth cause of action, plaintiff alleges that he was illegally arrested for burglary by Trooper McFeeley on July 23, 2016. "[T]he gist of the action for false imprisonment [also called false arrest] is illegal detention of a person without lawful process or by an unlawful execution of such process." Riffe v. Armstrong, 197 W.Va. 626, 640, 477 S.E.2d 535, 549 (1996).

The Fourth Amendment permits a police officer to arrest a suspect without a warrant if there is probable cause to suggest that the suspect committed a felony. U.S. v. Watson, 423 U.S. 411, 417 (1976). That officer may even make the arrest if the felony was not committed in the officer's presence. Id. at 418. Burglary is a felony offense in West Virginia. W. Va. Code § 61-3-11(a).

Here, the only factual allegation against Trooper McFeeley is that he chose not to believe the plaintiff regarding the burglary for which he was arrested. Compl., ECF No. 30, at ¶ 152. The plaintiff admits that the magistrate found probable cause, arraigned the plaintiff, and assigned the case to another Clay County magistrate, and at the time the motion to amend the complaint was filed, the case was still pending in Clay County

Court.  Id. at ¶¶ 153-156.  Plaintiff does not claim that his arrest was wrongful or that Trooper McFeeley lacked probable cause, but only states that this arrest was the result of retaliation.  Id. at ¶ 105.  Without arguing that the arrest was illegal in some manner, a conclusory allegation that it was retaliatory cannot support a wrongful arrest claim.  See Twombley, 550 U.S. at 570 (Pleadings require "enough facts to state a claim to relief that is plausible on its face."); see also infra Section IV.C.3, at p. 20-24 (discussing why any claim asserting retaliation by Trooper McFeeley is a conclusory allegation).  Accordingly, Count 10 is dismissed.

> ### 2. Count 15 (Retaliation claim against Trooper McFeeley and Colonel Smithers)

Count 15 asserts a § 1983 retaliation claim under the First Amendment against Trooper McFeeley and Colonel Smithers. The plaintiff alleges that his arrest on July 23, 2016 was performed in retaliation for the filing of the original complaint in this lawsuit against the three County Defendants on

July 27, 2015.  The State Defendants argue that this claim

should be dismissed for failure to state a claim.[5]

Section 1983 claims require that a plaintiff allege

that a right secured by the Constitution or laws of the United

States has been violated and that the violation was committed by

a person acting under color of state law.  West v. Atkins, 487

U.S. 42, 48 (1988).  The Fourth Circuit has held that:

> In order to state a colorable retaliation claim under
> Section 1983, a plaintiff 'must allege that (1) []he
> engaged in protected First Amendment Activity, (2) the
> defendant[] took some action that adversely affected
> [his] First Amendment rights, and (3) there was a
> causal relationship between [his] protected activity
> and the defendant['s] conduct.'

Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting

Constantine v. Rectors & Visitors of George Mason Univ., 411

F.3d 474, 499 (4th Cir. 2005)).

Regarding the first element set forth above, "the

First Amendment right to free speech includes not only the

---

[5] Trooper McFeeley focuses his failure to state a claim arguments
on the claims for wrongful arrest and intentional infliction of
emotional distress arising from the July 23, 2016 arrest.
Trooper McFeeley does not raise any specific arguments as to why
the § 1983 action for the July 23, 2016 arrests should be
dismissed, but inasmuch as the briefing states that "Plaintiff's
claims against Trooper McFeeley arising out of Defendant Trooper
McFeeley's July 23, 2016 arrest of Plaintiff should be dismissed
because Plaintiff has failed to state a claim for which relief
can be granted," State Defs.' Mem., ECF No. 37, at 12, the court
will determine whether the plaintiff failed to state a § 1983
retaliation claim.

affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). "The filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts." ACLU of Md. v. Wicomico Cty., Md., 999 F.3d 780, 785 (4th Cir. 1993) (quoting Hoeber on Behalf of NLRB v. Local 30, 939 F.2d 118, 126 (3d Cir. 1991)) (internal quotations omitted).

The second element of establishing a First Amendment retaliation claim requires that the plaintiff "suffer[] adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Constantine, 411 F.3d at 500 (citations omitted).

Finally, the causation element requires that the plaintiff in a First Amendment retaliation action "must show, at the very least, that the defendant was aware of her engaging in protected activity." Constantine, 411 F.3d at 501 (citing Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)).

Here, even assuming the first two elements are met, the plaintiff has not demonstrated that Trooper McFeeley was aware the plaintiff brought the original lawsuit. The original lawsuit was brought in July 2015 and the arrest occurred in July 2016. However, there are no allegations that anyone communicated to or with Trooper McFeeley to encourage him to arrest the plaintiff as retaliation for his filing the original lawsuit against police officers working for the Clay County Commission, a separate organization than the one that employs Trooper McFeeley. While the plaintiff alleges that Deputy Belt communicated with other troopers of the West Virginia State Police (Clinton Nichols and/or Aaron Nichols) encouraging them to "target" the plaintiff, Compl., ECF No. 30, at ¶ 35, there is no allegation that someone encouraged Trooper McFeeley in the same fashion.[6] Additionally, as Trooper McFeeley nor any other state troopers or their actions were named or implicated in the original complaint, there is no indication that he had knowledge that the original complaint was even filed. Finally, inasmuch as the plaintiff's motion to amend the complaint to include

_____

[6] The plaintiff summarily states that "based on good faith information and belief . . . the Defendants have continued to retaliate against the Plaintiff and that retaliation has been consistent and ongoing since the original DUI traffic stop that occurred on or about July 26, 2013." Compl., ECF No. 30, at ¶ 34. However, this does not indicate that Trooper McFeeley had knowledge of the original lawsuit.

Trooper McFeeley and other state troopers was filed in September 2016, after the July 23, 2016 arrest, he could not have retaliated against the plaintiff for filing or attempting to file suit against him or his colleagues.

The plaintiff has not pled facts sufficient for his First Amendment retaliation claim against Trooper McFeeley to survive a motion to dismiss, and the allegation that the arrest was retaliatory is merely conclusory. Therefore, this claim is dismissed.

Correspondingly, Colonel Smithers argues that inasmuch as there are no factual allegations against him for retaliation, the plaintiff is suing him for supervisory liability yet has not set forth adequate facts to maintain such a claim against him. State Defs.' Mem., ECF No. 37, at 10-11.[7] The only allegation pled against Colonel Smithers, and others, is that they "failed to . . . provide reasonable accommodations; create policies or procedures; and properly train employees and staff to prevent the Plaintiff from being discriminated against based upon his disabilities." Compl., ECF No. 30, at ¶ 61.

---

[7] The State Defendants use West Virginia law in support of the motion to dismiss the § 1983 claim in Count 15 against Colonel Smithers; however, the court must apply federal law.

"Because vicarious liability is inapplicable to . . .

§ 1983 suits, a plaintiff must plead that each Government-

official defendant, through the official's own individual

actions, has violated the Constitution." Ashcroft v. Iqbal, 556

U.S. 662, 676 (2009).  Supervisory liability may be established

against a defendant for § 1983 claims, see Shaw v. Stroud, 13

F.3d 791, 799 (4th Cir. 1994), but the court need not evaluate

such an argument inasmuch as plaintiff's retaliation claim

cannot stand against Colonel Smithers's subordinate, Trooper

McFeeley.  See Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir.

2012) ("Supervisors . . . cannot be liable under § 1983 without

some predicate constitutional injury at the hands of the

individual [state] officer.") (internal quotations and citations

omitted).

        As noted above, the plaintiff has not adequately pled

a § 1983 retaliation claim against Trooper McFeeley, and the

corresponding claim for supervisory liability and training

against Colonel Smithers is dismissed.[8]  Consequently, Count 15

is dismissed.

---

[8] The capacity in which the State Defendants are being sued is
not identified in the complaint.  In the plaintiff's response,
he states that "if it is unclear whether the Complaint states
claims against the individuals in their official capacities
versus against them in their respective individual capacities,
the Plaintiff respectfully requests leave . . . to clarify that

3. Count 16 (IIED from the July 23, 2016 arrest)


Count 16 asserts a claim for IIED against both State Defendants.  The only claim for IIED that the State Defendants contest arises from the July 23, 2016 arrest by Trooper McFeeley.  The State Defendants assert that this claim should be dismissed for failure to state a claim upon which relief can be granted.  State Defs.' Mem., ECF No. 37, at 11-12, 13-14.

The Supreme Court of West Virginia has set forth the elements necessary to plead IIED:

> (1) That defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) That the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) That the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) That the emotional distress suffered

---

the claims are against individual state actors acting in their official capacities to the detriment and violative of the rights of the Plaintiff."  Pl.'s Resp., ECF No. 53, at 9.  The State Defendants argue in their reply that since the plaintiff purports to sue them in their official capacities, the § 1983 claims should be dismissed.  State Defs.' Reply, ECF No. 55, at 5-7 (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.")).  However, it appears to the court that the plaintiff, in this response, is claiming that only his ADA claims are being asserted against the State Defendants in their official capacities, and the text of the complaint appears to support the notion that the remaining claims are being brought against the State Defendants in their individual capacities.

> by the plaintiff was so severe that no reasonable
> person could be expected to endure it.

Philyaw v. E. Associated Coal Corp., 219 W. Va. 252, 257, 633
S.E.2d 8, 13 (2006) (quoting Syllabus Point 3, Travis v. Alcon
Labs., 202 W. Va. 369, 504 S.E.2d 419 (1998)).  Courts are to
play a "gate-keeping" role in determining whether, as a matter
of law, asserted conduct could reasonably satisfy the element of
"atrocious, intolerable, and so extreme and outrageous as to
exceed the bounds of decency."  Id.  Conduct which is merely
"unreasonable, unkind or unfair" is insufficient to state a
claim for IIED.  Id. at 258.

Trooper McFeeley is alleged to have arrested the
plaintiff for burglary on July 23, 2016, and the plaintiff
asserts that the trooper had "discretion" as to whether to
arrest the plaintiff, and that the trooper chose "not to believe
the Plaintiff."  Compl., ECF No. 30, at ¶¶ 151-152.  This
conduct cannot be said to go beyond the bounds of decency.  In
fact, it does not appear that the plaintiff actually alleges
that Trooper McFeeley engaged in any wrongful conduct in this
encounter.  Accordingly, the plaintiff has failed to adequately
plead a claim of IIED against Trooper McFeeley for his actions
on July 23, 2016.

As mentioned above, inasmuch as there are no specific
factual allegations pled as to Colonel Smithers's conduct, it

appears that he is being sued in connection with the actions of
his employee.  Since there is no surviving claim against Trooper
McFeeley, there can be no claim for supervisory and training
liability for IIED against Colonel Smithers arising out of the
July 23, 2016 arrest.  Therefore, plaintiff's IIED claims
against the State Defendants based on the July 23, 2016 arrest
are dismissed.

### C. Count 5 Due Process Claim under § 1983 pursuant to the Fifth and Fourteenth Amendments

Count 5 of the First Amended Complaint asserts a §
1983 claim under the Fourth, Fifth, and Fourteenth Amendments
against Colonel Smithers arising out of the May 22, 2015 DUI
arrest by Trooper Demaske.  Here, the plaintiff states that he
was "arrested, seized and searched without any reasonable
suspicion by the arresting officer, or if there was reasonable
suspicion/probable cause for DUI traffic stop, the officer's
reasonable suspicion/probable cause was based on the Plaintiff's
disabilities."  Compl., ECF No. 30, at ¶ 79.

A substantive due process claim challenging the use of
force may lie only if neither the Fourth nor the Eighth
Amendment applies.  See Graham v. Connor, 490 U.S. 386, 395
(1989).  While this claim is for an unlawful arrest rather than

excessive use of force, the principle of <u>Graham</u> applies, and the textually specific Fourth Amendment protection preempts the more generalized substantive due process protection.  <u>See</u> <u>United States v. Lanier</u>, 520 U.S. 259, 272 n.7 (1997) ("<u>Graham</u> simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").  Accordingly, the plaintiff's § 1983 claim, insofar as it is brought under the Fifth and Fourteenth Amendments, contained within Count 5 is dismissed.


D. Qualified Immunity


The court notes that in their reply, the State Defendants assert that they are entitled to qualified immunity but fail to explain why.  Instead, the State Defendants merely assert that the court may properly rule on the issue of qualified immunity at the motion to dismiss stage.  State Defs.' Reply, ECF No. 55, at 4.  It appears that the State Defendants refer to the County Defendants' qualified immunity arguments raised in their motion to dismiss in support of the contention that Trooper McFeeley and Colonel Smithers are entitled to qualified immunity.  <u>Id.</u>  However, the court has already stated

that it will not evaluate arguments not made by the State
Defendants in their motion to dismiss or the accompanying
memorandum in support.

## V.    Conclusion

For the foregoing reasons, it is ORDERED that the
State Defendants' motion to dismiss be, and it hereby is, denied
except that it is granted by dismissal as to them of the
following:

1. Count 10;

2. Count 15;

3. Count 16, but only to the extent that the IIED claim
   against Trooper McFeeley and Colonel Smithers relates to
   the July 23, 2016 arrest; and

4. Count 5, but only to the extent that it is brought under
   the Fifth and Fourteenth Amendments against Colonel
   Smithers.

It is further ORDERED that the State Defendants'
motion to designate their motion to dismiss as unopposed and to
dismiss plaintiff's claim for failure to prosecute be, and
hereby is, denied as moot.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and to any unrepresented parties.

ENTER: March 21, 2019

John T. Copenhaver, Jr.
Senior United States District Judge