UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


DAN BROWN,

        Plaintiff,

v.                           Civil Action No. 2:15-cv-11549

ROBERT BELT, Deputy Sheriff,
Clay County Sheriff's Office;
GARRETT SAMPLES, JR., Sheriff,
Clay County Sheriff's Office;
TYLER CARUTHERS, Deputy Sheriff,
Clay County Sheriff's Office; CLAY
COUNTY COMMISSION; COLONEL C.R. "JAY"
SMITHERS, Superintendent, WV State
Police; STEVEN DEMASKE, Trooper, WV
State Police; and TYLER DANA MCFEELEY,
Trooper, WV State Police,

        Defendants.


## MEMORANDUM OPINION AND ORDER


        Pending is the joint motion for summary judgment,
filed March 6, 2019, by defendants Robert Belt ("Deputy Belt"),
Tyler Caruthers ("Deputy Caruthers"), Garrett Samples, Jr.
("Sheriff Samples") and the Clay County Commission (the
"Commission") (collectively, "the County Defendants").  Also
pending is their motion to dismiss for failure to prosecute,
filed March 6, 2019.

# I.    Facts as Alleged

While the court is ruling on the County Defendants' motion for summary judgment, in the interest of thoroughness, the plaintiff's allegations in the First Amended Complaint are set forth below.

Plaintiff Dan Brown is a resident of Clay, West Virginia.  First Am. Compl. ("Compl.") ¶ 4.  On July 26, 2013, defendant Deputy Robert Belt, a deputy sheriff of Clay County, West Virginia saw Mr. Brown on the side of the road with a flat tire.  Id. ¶ 10.  Deputy Belt then approached Mr. Brown, allegedly without any reasonable suspicion, began to conduct a traffic stop for driving under the influence ("DUI") and searched his vehicle.  Id. ¶ 11.  Mr. Brown alleges that Deputy Belt caused the blowout of his tire that resulted in the officer pulling him over, id. ¶ 33, and that Deputy Belt knew of Mr. Brown's whereabouts due to information obtained from Shonda Tanner, a mutual acquaintance, id. ¶¶ 30-33.

When Deputy Belt ordered Mr. Brown to undergo three field sobriety tests, the "Horizontal Gaze Nystagmus," the "Walk and Turn," and the "One-Leg Stand," Mr. Brown pointed out that he suffered from several physical disabilities that prevented him from being able to adequately complete the tests.  Id. ¶¶

12-17.  In particular, he has long had nystagmus, an eye condition, as well as a leg injury that makes him unable to place weight on his leg.  Id. ¶¶ 15-16.  Mr. Brown has been determined by the United States Social Security Administration to be fully disabled.  Id. ¶ 25.  Although Mr. Brown told Deputy Belt that he was "100% disabled" and "could not take the normal tests for DUI," Deputy Belt continued to administer the three tests without offering accommodations.  Id. ¶¶ 12, 21. Following the tests, Deputy Belt arrested Mr. Brown for DUI. Id. ¶ 21.

Mr. Brown did take a preliminary breath test, and the result showed a blood alcohol level of 0.0.  Id. ¶ 18.  He asked to be given a blood test to provide further proof of his sobriety, but Deputy Belt failed to request or administer one. Id. ¶¶ 19-20.

The DUI charge was later dismissed, and when Mr. Brown contested the revocation of his driver's license in an administrative hearing, Deputy Belt admitted to being negligent when filling out the DUI information sheet.  Id. ¶¶ 22-23.  Also at this hearing, Deputy Belt is said to have stated that he had never received training on compliance with the Americans with Disabilities Act ("ADA") or on how to provide reasonable

accommodations to disabled individuals whose disability impairs their ability to pass field sobriety tests. <u>Id.</u> ¶ 23.

Over a year and a half after the July 2013 incident, on or about February 20, 2015, Mr. Brown reported a robbery of over $40,000 worth of tools from his property. <u>Id.</u> ¶¶ 26-27. Deputy Belt responded to Mr. Brown's call to the authorities yet did not file a police report or investigate the robbery. <u>Id.</u> ¶¶ 26-27. Because Deputy Belt did not file a police report, Mr. Brown's insurance claim was made more difficult to support. <u>Id.</u> ¶¶ 28-29. Additionally, the tools were never recovered. <u>Id.</u> ¶ 29. Mr. Brown believes this failure to investigate to be retaliation for the original DUI charge being dismissed. <u>Id.</u> ¶ 26.

On May 22, 2015, Mr. Brown was once again arrested for DUI. <u>Id.</u> ¶ 36. Mr. Brown alleges on good faith information and reasonable belief that Deputy Belt communicated to members of the West Virginia State Police to "target" the plaintiff and charge him with DUI. <u>Id.</u> ¶ 35. West Virginia State Troopers Huff, Tallman and defendant Demaske were the arresting officers for charges of DUI, left of center driving, and no proof of insurance. <u>Id.</u> ¶ 36. Mr. Brown informed the officers of his disability and subsequently failed the three standard field sobriety tests. <u>Id.</u> ¶¶ 64, 67. He later took a breath test

which revealed that he had a blood alcohol level of 0.0.  Id. ¶ 65.  All three charges were later dismissed after the officers failed to appear or present any proof of impairment.  Id. ¶ 37.

On January 15, 2016, Mr. Brown called the police to report a man invading his home and battering him.  Id. ¶ 38.  Defendant Trooper McFeeley, a West Virginia State Trooper, responded to the call and arrested Mr. Brown for burglary, destruction of property, and providing false information to the state police, all without prosecuting the alleged crimes that Mr. Brown called to report.  Id. ¶ 39.  Mr. Brown asserts that this arrest was in retaliation for filing the original complaint in this lawsuit on July 27, 2015 against defendants Deputy Belt, Clay County Sheriff Garrett Samples, Jr., and the Clay County Commission ("the Commission").  Id. at 21-22.

Later, on July 5, 2016, Mr. Brown was driving in downtown Clay when he was in a minor car accident.  Id. ¶ 43.  Deputy Belt responded to the accident along with Deputy Tyler Caruthers, a fellow Clay County deputy sheriff.  Id. ¶ 44.  They conducted DUI field sobriety tests and charged Mr. Brown with DUI.  Id. ¶¶ 44-45, 48.  Mr. Brown had informed the deputies that he was physically unable to pass the field sobriety tests, yet the officers continued to conduct the same three field sobriety tests as had been conducted by Deputy Belt at a

previous stop.  Id. ¶¶ 47-48, 67.  Mr. Brown participated in a breath test which again showed that he had a blood alcohol level of 0.0.  Id. ¶ 65.  Mr. Brown admitted to taking his daily prescription medications but also stated that no one had ever told him they might impair his ability to drive.  Id. ¶ 49.  Mr. Brown requested a blood test to prove that he had only taken his prescribed medications, but the officers refused.  Id. ¶ 50.

Upon arriving at the police station, Mr. Brown was taken to a dark closet and held there for approximately four hours while waiting for an expert from the Charleston, West Virginia detachment who was to conduct specialized testing of the plaintiff.  Id. ¶¶ 46, 51-52.  During that time, he was placed under a "red light" for further testing of impairment.  Id. ¶ 52.  This treatment triggered a migraine, and the officers would not allow Mr. Brown to take his medication to alleviate it.  Id.  This charge for DUI was still pending as of plaintiff's filing of his motion to amend the complaint on September 15, 2016.  Id. ¶ 54; ECF No. 23.

On July 23, 2016, Trooper McFeeley arrested Mr. Brown for another burglary.  Id. ¶ 53.  Mr. Brown claims that upon arrest, Trooper McFeeley elected not to believe Mr. Brown's story regarding the incident and that the officer's choice was

motived by retaliatory intent for the filing of this lawsuit on July 27, 2015.  Id. ¶¶ 105, 151.

The court notes that the details of the July 26, 2013 arrest that the plaintiff provides in his deposition vary meaningfully from the allegations contained in the First Amended Complaint.  The plaintiff states that as he drove past Deputy Belt on that date his tire started to go flat, which led to his pulling over at a nearby service station.  Pl.'s Dep., ECF No. 69-1, at p. 49.  While stopped at the service station, Deputy Belt pulled in behind the plaintiff and inquired as to why he was driving on a flat tire.  Id.  While the plaintiff alleged in his complaint that Deputy Belt caused his tire to go flat, he admits that he has no "direct evidence" that Deputy Belt caused his tire to go flat.  Id. at 52.

The plaintiff further states that after speaking with Deputy Belt about the flat tire, the plaintiff pulled out his registration, insurance card, and driver's license.  Id. at 53.  Upon taking those items out (it is not specified from where), Deputy Belt saw a pill bottle and the plaintiff said the officer's whole demeanor changed.  Id..  After seeing the pill bottle, Deputy Belt remarked on the changing conditions of

plaintiff's eyes and informed the plaintiff that he was going to conduct field sobriety tests. Id. at 54.[1]

The plaintiff also stated that he was taking Oxycodone, Valium and Adderall daily at the time the original complaint was filed on July 27, 2015, id. at 36, and that he carried these pill bottles in his glove compartment, id. at 44.

## II. Procedural Posture

On July 27, 2015, plaintiff filed his original complaint with the court against Deputy Belt, Sheriff Samples, and the Commission for the actions taken by Deputy Belt during the July 26, 2013 DUI arrest. The complaint contained five "causes of action" which the court treated as Counts 1 through 5, namely, Count 1, failure to provide reasonable accommodation under Title II of the ADA, 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794; Count 2, negligent hiring, supervision, and/or training; Count 3, Fourth and Fourteenth Amendment due process violations; Count 4, wrongful arrest; and Count 5, intentional infliction of emotional distress ("IIED"). On October 13, 2017, the court ruled on the joint motion to

---

[1] The court notes the plaintiff states in his deposition testimony that Deputy Belt thought the plaintiff was "drunk" instead of believing that plaintiff had a disability which caused him to fail the field sobriety tests. Id. at 53-56.

dismiss of Deputy Belt, the Commission and Sheriff Samples, the only defendants then charged in the complaint. ECF No. 26. Pursuant to that motion, the court dismissed the negligent hiring prong of Count 2[2] and all of Counts 4 (wrongful arrest) and 5 (IIED) but did not dismiss any other claims. Id. at 15.

On September 15, 2016, the plaintiff filed for leave to amend the complaint. The court granted the motion on March 30, 2018, and the First Amended Complaint with the named defendants as set forth in the case caption above was deemed filed on that same day, thereby adding as defendants Deputy Tyler Caruthers, Trooper Steven Demaske, Trooper McFeeley, Colonel Smithers and Magistrate Jeffrey Boggs. The court at the same time ordered that the negligent hiring claim, now in Count 4, be dismissed; that the July 26, 2013 action for wrongful arrest against Deputy Belt, now in Count 6, was time barred due to the one-year statute of limitations and was dismissed; and that Magistrate Boggs, named in several counts, be dismissed from the action. ECF No. 29, at 6.

The First Amended Complaint raises sixteen "causes of action," which the court treats as Counts 1 through 16. One or

---

[2] Also, in Count 2, the court construed the plaintiff's negligent supervision and training claim against the Commission as a claim for failure to train under Title II of the ADA for the July 26, 2013 arrest. ECF No. 26, at 9-11.

more of the County Defendants is the subject of the following nine counts:  Count 1, discrimination and failure to provide reasonable accommodations under Title II of the ADA and § 504 of the Rehabilitation Act, during the first DUI traffic stop, on July 26, 2013, against Deputy Belt, the Commission and Sheriff Samples, the former Clay County Sheriff; Count 3, discrimination and failure to provide reasonable accommodations, as in Count 1, during the third DUI traffic stop, on July 5, 2016, against Deputy Belt, Deputy Caruthers, the Commission and Sheriff Samples; Count 4, negligent supervision and/or training against Sheriff Samples and the Commission arising from the July 26, 2013 and July 5, 2016 DUI arrests; Count 5, violation of Due Process Rights under the Fourth, Fifth, and Fourteenth Amendments of the Constitution under 42 U.S.C. § 1983 arising from the July 26, 2013, and July 5, 2016 DUI arrests against Deputy Belt, Deputy Caruthers, the Commission and Sheriff Samples; Count 9, wrongful arrest for DUI on July 5, 2016 against Deputy Belt, Deputy Caruthers, the Commission and Sheriff Samples; Count 11, retaliation claim under the First and Fourteenth Amendments and 42 U.S.C. § 1983 for failure to investigate the robbery of Mr. Brown's property on February 20, 2015 against Deputy Belt, Sheriff Samples and the Commission; Count 12, retaliation claim under the First and Fourteenth Amendments and 42 U.S.C. §1983 for "targeting" Mr. Brown in the

DUI arrest on May 22, 2015 against Deputy Belt; Count 14, retaliation claim under the First and Fourteenth Amendments and 42 U.S.C. § 1983 for wrongful arrest and "torture" in the DUI arrest of July 5, 2016 against Deputy Caruthers, Deputy Belt, Sheriff Samples, and the Commission; and Count 16, intentional infliction of emotional distress/outrage against all defendants for all of the allegations contained in the First Amended Complaint.

On December 17, 2018, the County Defendants filed a motion to compel plaintiff's responses to discovery requests. ECF No. 64. The plaintiff failed to respond to this motion. On January 4, 2019, Magistrate Judge Dwane L. Tinsley granted the County Defendants' motion to compel and further ordered that each of the "Requests for Admissions contained in the Defendant Robert Belt's Request for Admissions to Plaintiff served on or about October 18, 2018, shall be deemed admitted." ECF No. 65, at 2-3 (emphasis added). The requests for admission were as follows:

1. Admit that plaintiff failed all three field sobriety tests on July 26, 2013.

2. Admit that Deputy Belt had probable cause to arrest Plaintiff on July 26, 2013 based upon Plaintiff's failure on all three field sobriety tests.

3. Admit that Plaintiff was not arrested based upon his disabilities on July 26, 2013.

4. Admit that Plaintiff failed all three field sobriety tests on July 5, 2016.

5. Admit that Deputy Belt had probable cause to arrest Plaintiff on July 5, 2016 based on Plaintiff's failure on all three field sobriety tests.

6. Admit that Plaintiff was not arrested based upon his disabilities on July 5, 2016.

7. Admit that Deputy Belt did not retaliate against Plaintiff by failing to investigate a robbery/burglary.

8. Admit that Deputy Belt did not retaliate against Plaintiff by communicating with other officers to arrest Plaintiff.

9. Admit that Deputy Belt did not retaliate against Plaintiff by arresting him following the July 5, 2016 traffic accident.

10. Admit that Deputy Belt did not request an expert from Charleston, West Virginia to come interrogate Plaintiff following the July 5, 2016 traffic accident.

11. Admit that Deputy Belt did not deny Plaintiff medications
   following the July 5, 2016 traffic accident.

12. Admit that Plaintiff was not "tortured" following the
   July 5, 2016 traffic accident.

ECF No. 64-1, Ex. A, at 18-20.[3]

The County Defendants filed their joint motion for
summary judgment on March 6, 2019, along with a motion to
dismiss for failure to prosecute. Defendants Colonel Smithers
and Trooper McFeeley filed their motion for summary judgment
later that same day. Instead of filing any response in
opposition, plaintiff's counsel filed, on March 20, 2019, a
motion to withdraw as counsel. The court held a hearing on
March 28, 2019, on plaintiff's counsel's motion to withdraw, at
which hearing the plaintiff, though directed by order to appear
in person, failed to appear. At the hearing the court deferred
judgment on the motion to withdraw and informed plaintiff's
counsel that it would consider the plaintiff's response to the
above-listed dispositive motions, if such responses were filed,

---

[3] "[A]dmissions obtained under Rule 36, including matters deemed
to be admitted by a party's failure to respond to a request for
admissions, can form the basis for granting Summary Judgment."
Gardner v. Borden, Inc., 110 F.R.D. 696, 697 (S.D.W. Va. 1986),
cause dismissed, 812 F.2d 1400 (4th Cir. 1987) (quoting Freed v.
Plastic Packaging Materials, Inc., 66 F.R.D. 550, 552 (E.D. Pa.
1975)).

though late, by March 29, 2019.  No response has been provided
by plaintiff to any of the pending dispositive motions.

### III. Standard of Review

A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  Material facts are
those necessary to establish the elements of a party's cause of
action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
(1986).

A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-movant. <u>Id.</u>  The
moving party has the burden of showing -- "that is, pointing out
to the district court -- that there is an absence of evidence to
support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 325 (1986).  If the movant satisfies this burden,
then the non-movant must set forth specific facts as would be
admissible in evidence that demonstrate the existence of a
genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>id.</u> at

322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  **Williams v. Griffin**, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  **Anderson**, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  **Overstreet v. Ky. Cent. Life Ins. Co.**, 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, **Russell v. Microdyne Corp.**, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. **Sosebee v. Murphy**, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  **Charbonnages de France v. Smith**, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  **United States v. Diebold, Inc.**, 369 U.S. 654, 655 (1962).

IV.  Discussion

A. Counts 1 and 3 (ADA and Rehabilitation Act violations
   during the July 26, 2013 and July 5, 2016 DUI Arrests)

Counts 1 and 3 are brought against all County
Defendants under Title II of the ADA and § 504 of the
Rehabilitation Act and arise out of the July 26, 2013 DUI arrest
by Deputy Belt and the July 5, 2016 DUI arrest by Deputy Belt
and Deputy Caruthers.  The plaintiff asserts that the deputies
discriminated against him based upon his disabilities and failed
to provide reasonable accommodations to him during the arrests.

Title II of the ADA provides that "no qualified
individual with a disability shall, by reason of such
disability, be excluded from participation in or be denied the
benefits of the services, programs, or activities of a public
entity, or be subjected to discrimination by any such entity."
42 U.S.C. § 12132.  Similarly, § 504 of the Rehabilitation Act
states that "[n]o otherwise qualified individual with a
disability . . . shall, solely by reason of her or his
disability, be excluded from the participation in, be denied the
benefits of, or be subjected to discrimination under any program
or activity receiving Federal financial assistance."  29 U.S.C.
§ 794(a).  "Claims under the ADA's Title II and the

Rehabilitation Act can be combined for analytical purposes because the analysis is 'substantially the same.'" Seremeth v. Bd. of Cty. Comm'rs Frederick Cty., Md., 673 F.3d 333, 336 n.1 (4th Cir. 2012) (citation omitted).

The Court of Appeals for the Fourth Circuit has held that "[u]nder the ADA and similar statutes, liability may be imposed on a principal for the statutory violations of its agent," instead of just for policies that encourage discrimination. Rosen v. Montgomery Cty., Md., 121 F.3d 154, 157 n.3 (4th Cir. 1997) (citations omitted).

The Fourth Circuit has also noted:

> In the context of arrests, courts have recognized two types of Title II claims: (1) wrongful arrest, where police arrest a suspect based on his disability, not for any criminal activity; and (2) reasonable accommodation, where police properly arrest a suspect but fail to reasonably accommodate his disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees.

Waller ex rel. Estate of Hunt v. Danville, VA, 556 F.3d 171, 174 (4th Cir. 2009).

"In general, a plaintiff seeking recovery for violation of either statute must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of

such service, program, or activity, or otherwise discriminated

against, on the basis of her disability." **Constantine v.**

**Rectors & Visitors of George Mason Univ.**, 411 F.3d 474, 498 (4th

Cir. 2005) (citations omitted).

The Fourth Circuit has recognized the three following

forms of a disability as defined in the ADA:

> (1) "a physical or mental impairment that
> substantially limits one or more major life
> activities" (the "actual-disability" prong);
> (2) "a record of such an impairment" (the "record-of"
> prong); or
> (3) "being regarded as having such an impairment" (the
> "regarded-as" prong).

**Summers v. Altarum Inst., Corp.**, 740 F.3d 325, 328 (4th Cir.

2014) (quoting 42 U.S.C. § 12102(1)).  "For purposes of

paragraph (1), major life activities include, but are not

limited to, caring for oneself, performing manual tasks, seeing,

hearing, eating, sleeping, walking, standing, lifting, bending,

speaking, breathing, learning, reading, concentrating, thinking,

communicating, and working."  42 U.S.C. § 12102(2)(A).

To be successful on an ADA or Rehabilitation Act

claim, a plaintiff must show: "(1) that he has a physical or

mental impairment, (2) that this impairment implicates at least

one major life activity, and (3) that the limitation is

substantial."  **Heiko v. Colombo Sav. Bank, F.S.B.**, 434 F.3d 249,

254 (4th Cir. 2006).  To establish that impairments are

substantially limiting, a plaintiff must show that the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(ii).

Here, the plaintiff alleges that he is disabled due to his having nystagmus[4] and a leg injury.  Compl., ECF No. 30, ¶¶ 14-16.  While not expressly stated, it appears that the plaintiff is alleging a disability under the "actual disability" and "record-of" prongs, inasmuch as he stated that the Social Security Administration found him to be "100% disabled" and that his leg injury and nystagmus prevented him completing the three standard field sobriety tests.  Id. ¶¶ 14-16, 25.

The County Defendants argue that the plaintiff has failed to establish that he is disabled, and thus, his claims for discrimination and failure to provide reasonable accommodations under the ADA and Rehabilitation Act fail as a matter of law.  County Defs.' Mem. Supp. Mot. Summary J. ("County Defs.' Mem."), ECF No. 70, at 7.

---

[4] Nystagmus is defined as "[a]n abnormal and involuntary movement of the eyeballs either from side to side or up and down, but usually from side to side.  It is a sign of a number of ailments, usually of nervous origin.  It may, however, be due to simple fatigue of the eye muscles, as when watching a tennis game."  4 J.E. Schmidt, M.D., Attorney's Dictionary of Medicine and Word Finder N-175 (2018).

As an initial matter, the court determines that the plaintiff has not established that he has a record of impairment. Despite his claims that the Social Security Administration classified the plaintiff as disabled, he has presented no documentation, nor any other evidence, to support that assertion. Indeed, after the plaintiff stated in his initial Rule 26(a)(1) disclosures that he was in possession of or was in the process of obtaining such evidence, he has not produced any of that information. ECF No. 71-3.

The court now turns to the actual disability prong to determine whether the plaintiff's purported leg injury and nystagmus substantially limit one or more major life activity.

Regarding his leg injury, the plaintiff stated in his deposition that prior to the July 26, 2013 arrest, he did not "recall ever having a problem out of that leg. I don't recall every having pain in . . . the leg." Pl.'s Dep., ECF No. 69-1, at p. 46-48. The only issue he claimed to have ever had with the leg is that he could not pivot on it. Id. at 48. However, the plaintiff noted that he never had any difficulty walking or standing for long periods of time. Id. at 46.

Next, when asked if his nystagmus "affect[s] any activity that you would do on a daily basis, besides reading," the plaintiff responded, "[n]o, it does not, no." Pl.'s Dep.,

ECF No. 69-1, at p. 56.  The plaintiff further stated that his nystagmus only affects him when he is trying to focus on things close to eyes, like reading.  See id. at 55.

The plaintiff has failed to offer any evidence to suggest that either his leg injury or nystagmus substantially interferes with a major life activity.  In fact, his deposition suggests the contrary – that neither impairment has any meaningful impact on his everyday life.  Inasmuch as the plaintiff has not demonstrated that he is disabled, his claims for discrimination and failure to provide reasonable accommodations under Title II of the ADA and § 504 of the Rehabilitation Act against all defendants fail as a matter of law.  Accordingly, the County Defendants are entitled to summary judgment on Counts 1 and 3.

### B. Count 4 (negligent supervision and training arising from the July 26, 2013 and July 5, 2016 arrests)

Count 4 asserts a negligent supervision and training claim against Sheriff Samples and the Commission arising out of the July 26, 2013 and July 5, 2016 arrests by Deputy Belt and Deputy Caruthers.  Plaintiff contends that the Commission and Sheriff Samples failed to adequately fund training or train the officers on the requirements of the ADA, which led to the

plaintiff being discriminated against based on his disabilities. Compl., ECF No. 30, at ¶¶ 76-77.

While not addressed in the County Defendants' motion for summary judgment, in its October 13, 2017 memorandum opinion and order in which it ruled on the joint motion of Deputy Belt, Sheriff Samples and the Commission to dismiss the original complaint, the court found that in his charge for negligent supervision and training, the plaintiff had stated a claim for failure to train under Title II of the ADA. ECF No. 26, at 10. However, for the reasons set forth above, the plaintiff has failed to establish that he is disabled and therefore entitled to the protection of the ADA.[5] Accordingly, any claims for failure to train under that statute fail as a matter of law.

To the extent that the claims in Count 4 are grounded in negligence, the court applies West Virginia law.

Under West Virginia law, claims of negligent training and supervision are governed by general negligence principles. See Pruitt v. W. Va. Dep't of Pub. Safety, 664 S.E.2d 175, 179, 181-83 (W. Va. 2008) (allowing claims of negligent failure to train and supervise to proceed to trial); Neiswonger v.

---

[5] The plaintiff also stated in his deposition that he did not know if the officers "were trained in ADA cases . . . . If they were trained, they've strayed outside of their training." Pl.'s Dep., ECF No. 69-1, at p. 144.

Hennessey, 601 S.E.2d 69, 73, 73 n.3 (W. Va. 2004) (recognizing negligent hiring, training, and supervising as a cause of action grounded in state law and distinct from claims asserted under § 1983); Taylor v. Cabell Huntington Hosp., Inc., 538 S.E.2d 719, 725 (W. Va. 2000) ("The appellant's claim of negligent supervision must rest upon a showing that the hospital failed to properly supervise [an employee] and, as a result, [that employee] committed a negligent act which proximately caused the appellant's injury.").

The plaintiff has offered no evidence that either Sheriff Samples or the Commission negligently trained or supervised its officers. The plaintiff stated that he had no knowledge about the Commission's supervision of its officers and had no information regarding the training of the Commission's officers, or the funding of that training, other than what he believes to be true. Pl.'s Dep., ECF No. 69-1, pp. 72-73, 144-45, 148-50, 169-70.

Due to plaintiff's failure to offer any evidence in support of the allegations in the First Amended Complaint that Sheriff Samples and the Commission failed to supervise or train their officers, Sheriff Samples and the Commission are entitled to summary judgment as to Count 4.

C. **Count 5 (Due Process claims under § 1983 pursuant to the Fourth, Fifth and Fourteenth Amendments)**

Count 5 of the First Amended Complaint asserts a § 1983 claim under the Fourth, Fifth, and Fourteenth Amendments against each County Defendant arising out of the July 26, 2013 arrest by Deputy Belt and the July 5, 2016 DUI arrest by Deputy Belt and Deputy Caruthers. Here, the plaintiff states that he was "arrested, seized and searched without any reasonable suspicion by the arresting officer, or if there was reasonable suspicion/probable cause for DUI traffic stop, the officer's reasonable suspicion/probable cause was based on the Plaintiff's disabilities." Compl., ECF No. 30, at ¶ 79.

A substantive due process claim challenging the use of force may lie only if neither the Fourth nor the Eighth Amendment applies. See Graham v. Connor, 490 U.S. 386, 395 (1989). While this claim is for an unlawful arrest rather than excessive use of force, the principle of Graham applies, and the textually specific Fourth Amendment protection preempts the more generalized substantive due process protection. See United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) ("Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard

appropriate to that specific provision, not under the rubric of substantive due process."). Accordingly, the plaintiff's § 1983 claim, insofar as it is brought under the Fifth and Fourteenth Amendments, contained within Count 5 is dismissed.

Count 5, therefore, asserts § 1983 claims against the Commission, Sheriff Samples, Deputy Belt, and Deputy Caruthers for unlawful arrest in violation of only the Fourth Amendment arising out of the DUI arrests on July 26, 2013 and July 5, 2016.

Section 1983 claims require that a plaintiff allege that a right secured by the Constitution or laws of the United States has been violated and that the violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). In order to establish a § 1983 claim for unreasonable seizure or unlawful arrest under the Fourth Amendment, a plaintiff must demonstrate that he was arrested without probable cause. Brown v. Gilmore, 278 F.3d 362, 367-68 (4th Cir. 2002) (citations omitted).

Here, the plaintiff admitted that Deputy Belt had probable cause to arrest the plaintiff on both July 26, 2013 and July 5, 2016 and that neither arrest was based on his alleged disabilities. See ECF No. 64-1, Ex. A, at 18-19.

Further, in his deposition, the plaintiff provided no statement to indicate that Deputy Caruthers engaged in any unlawful activity on July 5, 2016.  The plaintiff did not remember if field sobriety tests were even conducted during that arrest and the only information he provided regarding Deputy Caruthers states that he was a nice person and good officer. Pl.'s Dep., ECF No. 69-1, at pp. 69, 85, 165, 168.

Additionally, inasmuch as there are no factual allegations against Sheriff Samples which suggest that he unlawfully seized the plaintiff, it appears that the plaintiff is suing him for supervisory liability under § 1983.  It further appears that the Commission is being sued for county liability based on its failure to train or supervise its officers.  See Compl., ECF No. 30, at ¶¶ 76-77.  Supervisory liability may be established against a defendant for § 1983 claims.  See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  Further, "[l]ocal governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690 (1978).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). As noted above, however, the plaintiff has offered no evidence that Sheriff Samples failed to train or supervise Deputy Belt or Deputy Caruthers. The plaintiff also stated that he had no knowledge about the Commission's supervision or training of its officers, or the funding of that training. See Pl.'s Dep., ECF No. 69-1, pp. 72-73, 144-45, 148-50, 169-70.[6]

Accordingly, the County Defendants are all entitled to summary judgment as to Count 5.

---

[6] To the extent Count 5 is being asserted against any individually-named County Defendant in their official capacity, such claims are duplicative of those against the Commission and fail for the same reason. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. . . . As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal citations and quotations omitted).

**D. Counts 11, 12 and 14 (§ 1983 retaliation claims)**

In Count 11, the plaintiff asserts a § 1983 retaliation claim against Deputy Belt, Sheriff Samples and the Commission for Deputy Belt's failure to investigate a robbery on February 20, 2015; plaintiff alleges that Deputy Belt declined to investigate because the original DUI charge against the plaintiff was dismissed.  <u>See</u> Compl., ECF No. 30, at ¶ 26.  In Count 12, the plaintiff asserts a claim for retaliation against Deputy Belt for the DUI arrest performed by Trooper Demaske on May 22, 2015.  In Count 14, the plaintiff asserts a retaliation claim against Deputy Belt, Deputy Caruthers, Sheriff Samples and the Commission for the July 5, 2016 DUI arrest.  In Counts 12 and 14, the plaintiff asserts that he was arrested as retaliation for the filing of the original complaint in this lawsuit on July 27, 2015.  <u>See</u> Compl., ECF No. 30, at ¶¶ 120, 147.

The Fourth Circuit has held:

> In order to state a colorable retaliation claim under Section 1983, a plaintiff 'must allege that (1) []he engaged in protected First Amendment Activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct.'

Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine, 411 F.3d at 499)

Here, the plaintiff has admitted that Deputy Belt did not retaliate against him by failing to investigate the February 20, 2015 robbery, by communicating with other officers to arrest him, or by arresting him on July 5, 2016. ECF No. 64-1, Ex. A, at 18-19. Regarding Deputy Caruthers, the plaintiff admitted that Deputy Belt did not communicate with other officers to arrest the plaintiff (presumably, "other officers" would include Deputy Caruthers), and the plaintiff has offered no evidence to indicate that Deputy Caruthers was retaliating against him.[7]

Next, inasmuch as there are no facts alleged against Sheriff Samples suggesting that he personally retaliated against the plaintiff, to the extent he is being sued in Counts 11 and 14 in his individual capacity, it appears he is being sued for supervisory liability. See Shaw, 13 F.3d at 799. Additionally, in Counts 11 and 14, while not specified, it appears that the plaintiff is suing the Commission for some policy or absence thereof. See Monell, 436 U.S. at 690.

---

[7] In his deposition, the plaintiff continuously notes how nice Deputy Caruthers was during the July 5, 2016 incident. Pl.'s Dep., ECF No. 69-1, at pp. 69, 85, 165, 168

Once again, the plaintiff has offered no evidence to support the contention that Sheriff Samples failed to supervise or train Deputy Belt or Deputy Caruthers, nor has he indicated that the Commission had a policy that would encourage retaliation against those who obtain dismissals for criminal charges or file suit against employees of the Commission.[8]

For these reasons, the County Defendants' motion for summary judgment on the § 1983 retaliation claims in Counts 11, 12 and 14 is granted.

### E. Count 9 (wrongful arrest arising out of the July 5, 2016 DUI arrest)

As grounds for his ninth cause of action, the plaintiff asserts that he was unlawfully arrested by Deputy Belt and Deputy Caruthers on July 5, 2016. He brings this count against the deputies, Sheriff Samples, and the Commission.

The Supreme Court of Appeals of West Virginia has held: "[T]he gist of the action for false imprisonment [also called false arrest] is illegal detention of a person without lawful process or by an unlawful execution of such process."

---

[8] To the extent any of these claims are asserted against the individually-named County Defendants in their official capacity, those claims fail for the same reason the claims fail against the Commission.  See supra p. 27 n.6.

Riffe v. Armstrong, 477 S.E.2d 535, 549 (W. Va. 1996) (citations omitted).

Here, the plaintiff admitted that Deputy Belt had probable cause to arrest him on July 5, 2016 and that neither arrest was based upon his alleged disabilities. The plaintiff has also failed to provide any evidence or testimony to suggest that Deputy Caruthers should be liable for wrongful arrest.

Further, inasmuch as there are no facts which suggest that Sheriff Samples and the Commission arrested the plaintiff, it appears that they are being sued in connection with the actions of their employees. The plaintiff failed to provide any evidence supporting a claim for supervisory and training liability for wrongful arrest against Sheriff Samples or the Commission. Accordingly, the County Defendants are entitled to summary judgment as to Count 9.

F. Count 16 (IIED)

In their June 11, 2018 motion to dismiss, the County Defendants correctly note that the court previously dismissed plaintiff's IIED claim arising out of the July 26, 2013 arrest. However, in his First Amended Complaint, the plaintiff incorporates all factual allegations into his IIED claim in

Count 16 and asserts that the defendants engaged in "consistent and continuing" conduct that caused the plaintiff severe emotional distress. Compl., ECF No. 30, at ¶¶ 157-60.

The County Defendants did not expressly argue, in their motion to dismiss or in their motion for summary judgment, that the plaintiff's IIED claims arising from the subsequent interactions between some of the County Defendants and the plaintiff should be dismissed.[9]

The West Virginia Supreme Court has stated that courts are to play a "gate-keeping" role in determining whether, as a matter of law, a plaintiff could establish one key element of an IIED claim: whether conduct is "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." Philyaw v. E. Associated Coal Corp., 633 S.E.2d 8, 13 (2006).

Here, the plaintiff has admitted that Deputy Belt did not retaliate against him by choosing not to investigate a robbery on February 20, 2015. He admitted that Deputy Belt had probable cause to arrest him on July 5, 2016 and that Deputy Belt did not retaliate against him for that arrest. He admitted

_____

[9] The court notes that had it ruled on the County Defendants' motion to dismiss the First Amended Complaint before the dispositive motions' deadline expired, it is likely that the County Defendants would have explicitly moved for summary judgment on the plaintiff's IIED claims.

that Deputy Belt did not retaliate against him by telling other officers to arrest him.  He admitted that neither the July 26, 2013 nor the July 5, 2016 arrest was based on his disabilities.  Finally, he admitted that Deputy Belt did not deny him medications and that he was not tortured following the July 5, 2016 arrest.  See ECF No. 64-1, Ex. A, at 18-20.  Independently of those admissions, the plaintiff has also failed to present any evidence to suggest that any conduct by the County Defendants was outrageous.

Despite the fact that the County Defendants would be entitled to summary judgment on plaintiff's remaining IIED claims against them, they failed to move for summary judgment on those claims.  However, the County Defendants are still entitled to the dismissal of those claims with prejudice, based on their motion to dismiss plaintiff's First Amended Complaint for failure to prosecute.  ECF No. 71.

Rule 41(b) of the Federal Rules of Civil Procedure provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it [and] . . . [u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) . . .operates as an adjudication on the merits."

The County Defendants' motion is grounded in the plaintiff's long history of dilatory conduct in this matter and his failure to comply with Judge Tinsley's January 4, 2019 order compelling the plaintiff to respond to the county defendants' first set of discovery requests or Judge Tinsley's February 5, 2019 order compelling plaintiff's counsel to pay the County Defendants' attorney fees arising out of their motion to compel. County Defs.' Mem. Supp. Mot. Dismiss, ECF No. 72, at 7.

The Fourth Circuit has directed district courts to take the following four factors into account in deciding whether a Rule 41(b) dismissal is appropriate:

> (1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of a "drawn out history of deliberately proceeding in a dilatory fashion", and (4) the existence of sanctions less drastic than dismissal.

Herbert v. Saffell, 877 F.2d 267, 270 (4th Cir. 1989) (citation omitted).

Here, the plaintiff stated in his initial Rule 26(a)(1), filed in May 2016, that medical records, social security records and copies of the records from his criminal case and administrative agency case were either in his

possession or were being obtained.[10]  ECF No. 71-3, at 1-2.  He also stated that these documents were forthcoming and would be submitted in supplemental disclosures.  Id.  The plaintiff has yet to disclose any of these documents to the County Defendants. Next, after receiving notice on December 10, 2018 by electronic letter of the County Defendants' intent to file a motion to compel, plaintiff's counsel acknowledged in an electronic letter to the County Defendants' counsel that he had "been having difficulty obtaining the information from [his] client," but he believed that he could complete the discovery responses by December 14, 2018.  ECF No. 71-5.  No responses were provided. Even after Judge Tinsley ordered the plaintiff to serve his responses by January 18, 2019, plaintiff failed to file a response.  ECF No. 65.  Also, immediately prior to his deposition, the plaintiff provided several requested authorizations that had been executed in October and December 2018 yet appear not to have been provided by the plaintiff to plaintiff's counsel until that day.  Pl.'s Dep., ECF No. 69-1, at pp. 105-09.  The plaintiff's apparent disinterest in pursuing this litigation culminated in his failure to appear at the

---

[10] This disclosure was given only to Deputy Belt, Sheriff Samples and the Commission, as the plaintiff had not yet moved to amend his complaint to add other defendants.

hearing on plaintiff's counsel's motion to withdraw, of which he was made aware and ordered to attend.  ECF No. 77.[11]

These facts, coupled with plaintiff's counsel's failure to timely respond to the County Defendants' motion to dismiss and the complete absence of a response to the County Defendants' motion for summary judgment and motion to dismiss for failure to prosecute have prejudiced the County Defendants and suggest that no sanction other than dismissal of plaintiff's remaining IIED claims is warranted.

For these reasons, the County Defendants motion to dismiss for failure to prosecute is granted as to plaintiff's remaining IIED claims against them, which claims are seen to be meritless in any event.

---

[11] The court directed the Clerk to mail the order in which plaintiff was directed to attend the hearing on plaintiff's counsel's motion to withdraw to plaintiff's two known addresses. On April 1, 2019, the mail sent to 19 Pine Street, Clay, West Virginia 25043 was returned as undeliverable.  ECF No. 79. However, the order sent to P.O. Box 291, Clay, West Virginia 25043 was not returned and plaintiff's counsel informed the court at the hearing that plaintiff was aware of his required attendance and had spoken to him about the hearing earlier that same day.

## V.    Conclusion

In light of the foregoing, it is ORDERED as follows:

1. That the County Defendants' motion for summary judgment be, and hereby is, granted for all claims except for the remaining IIED claims in Count 16;

2. That the County Defendants' motion to dismiss for failure to prosecute be, and hereby is, granted, but only to the extent that such motion pertains to Count 16; and

3. That Deputy Belt, Deputy Caruthers, Sheriff Samples, and the Commission be, and hereby are, dismissed from the above-styled case.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

Enter: April 15, 2019

John T. Copenhaver, Jr.
Senior United States District Judge