UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


DAN BROWN,

          Plaintiff,

v.                                 Civil Action No. 2:15-cv-11549

ROBERT BELT, Deputy Sheriff,
Clay County Sheriff's Office;
GARRETT SAMPLES, JR., Sheriff,
Clay County Sheriff's Office;
TYLER CARUTHERS, Deputy Sheriff,
Clay County Sheriff's Office; CLAY
COUNTY COMMISSION; COLONEL C.R. "JAY"
SMITHERS, Superintendent, WV State
Police; STEVEN DEMASKE, Trooper, WV
State Police; and TYLER DANA MCFEELEY,
Trooper, WV State Police,

          Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


          Pending is the joint motion for summary judgment,

filed March 6, 2019 by defendants Tyler McFeeley ("Trooper

McFeeley") and C.R. "Jay" Smithers ("Colonel Smithers")

(collectively, the "State Defendants").

In the companion order this day entered granting the joint motion for summary judgment by the County Defendants,[1] the court set forth the factual allegations and legal claims in the plaintiff's First Amended Complaint as well as much of the procedural history of this case.

In the court's March 21, 2019 memorandum opinion and order, the court granted in part and denied in part the State Defendants' motion to dismiss.  ECF No 76.  The court dismissed the Fifth and Fourteenth Amendment claims against Colonel Smithers in Count 5, the state law wrongful arrest claim against Trooper McFeeley in Count 10, the 42 U.S.C. § 1983 retaliation claim against Trooper McFeeley and Colonel Smithers in Count 15, and the intentional infliction of emotional distress ("IIED") claim in Count 16 against Trooper McFeeley and Colonel Smithers, but only to the extent the claim relates to the July 23, 2016 arrest.  Id. at 31.

In the plaintiff's First Amended Complaint, he brings claims against the West Virginia State Police, not named as a party to this action and for whom the plaintiff has not issued a

---

[1] The County Defendants consist of Deputy Robert Belt, Deputy Tyler Caruthers, Sherriff Garrett Samples, Jr., and the Clay County Commission.

summons.  Accordingly, the court does not address claims against that entity, but does treat the reference to the West Virginia State Police as an indication that the named state defendants are being sued in their official capacity.  The plaintiff also asserts claims against Trooper Steven Demaske and issued summons as to him on April 19, 2018, after being made aware of the lack of service upon Demaske in the court's order of March 21, 2018; but there is no proof that service has been perfected.

The seven surviving counts against one or more of Trooper Demaske, Trooper McFeeley or Colonel Smithers are as follows:  Count 2, discrimination and failure to provide reasonable accommodations under Title II of the ADA, 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794, during the second DUI traffic stop, on May 22, 2015, against Trooper Demaske and Colonel Smithers, who is a supervising officer of the West Virginia State Police, and naming the West Virginia State Police; Count 4, negligent supervision and/or training arising from the May 22, 2015 DUI arrest against Colonel Smithers and naming the West Virginia State Police; Count 5, violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 arising from the May 22, 2015 DUI arrest against Colonel Smithers and Trooper Demaske, and naming the West Virginia State Police; Count 7, wrongful arrest for DUI on

May 22, 2015 against Trooper Demaske; Count 8, wrongful arrest for burglary, destruction of property and providing false information to state police on January 15, 2016 against Trooper McFeeley; Count 12, retaliation under the First and Fourteenth Amendments and 42 U.S.C. § 1983 for "targeting" Mr. Brown in the DUI arrest on May 22, 2015 against Trooper Demaske and Colonel Smithers, and naming the West Virginia State Police; Count 13, retaliation under the First and Fourteenth Amendments and 42 U.S.C. § 1983 for wrongful arrest for burglary, destruction of property, and providing false information to state police on January 15, 2016 against Trooper McFeeley; and Count 16, IIED against Trooper Demaske, Trooper McFeeley, and Colonel Smithers arising out of the arrests on May 22, 2015 and January 15, 2016.

The County Defendants filed their joint motion for summary judgment on March 6, 2019, along with a motion to dismiss for failure to prosecute. The State Defendants filed their motion for summary judgment later that same day. Instead of filing any response in opposition, plaintiff's counsel filed, on March 20, 2019, a motion to withdraw as counsel. The court held a hearing on March 28, 2019, on plaintiff's counsel's motion to withdraw, at which hearing the plaintiff, though directed by order to appear in person, failed to appear. At the hearing the court deferred judgment on the motion to withdraw

and informed plaintiff's counsel that it would consider the
plaintiff's response to the above-listed dispositive motions, if
such responses were filed, though late, by March 29, 2019.  No
response has been provided by plaintiff to any of the pending
dispositive motions.

## II.  Standard of Review

A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  Material facts are
those necessary to establish the elements of a party's cause of
action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-movant.  Id.  The
moving party has the burden of showing -- "that is, pointing out
to the district court -- that there is an absence of evidence to
support the nonmoving party's case."  Celotex Corp. v. Catrett,
477 U.S. 317, 325 (1986).  If the movant satisfies this burden,

then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must

be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

## III. Discussion

### A. Count 2 (ADA and Rehabilitation Act claims for the May 22, 2015 DUI arrest)

In the companion memorandum opinion and order entered on the County Defendants' motion for summary judgment, the court found that the plaintiff had failed to establish that he had a disability and was therefore not entitled to the protection of the ADA and Rehabilitation Act.

The court incorporates that same reasoning herein and finds that Colonel Smithers' motion for summary judgment on Count 2 is granted.[2]

---

[2] While the State Defendants do not expressly argue in their motion for summary judgment that the plaintiff has failed to establish that he has a disability, they do incorporate by reference the arguments made by the County Defendants in their motion for summary judgment. State Defs.' Mem. Supp. Mot. Summary J. ("State Defs.' Mem."), ECF No. 74, at 20 n.91.

**B. Count 4 (negligent supervision and training arising from the May 22, 2015 DUI arrest)**

Here, the plaintiff asserts that Colonel Smithers failed to train and supervise officers on the requirements of the ADA to prevent plaintiff from being discriminated against based on his disabilities. First Am. Compl. ("Compl."), ECF No. 30, at ¶¶ 61, 71.

To the extent Count 4 is a failure-to-train claim brought under Title II of the ADA, such a claim fails for the same reasons that plaintiff's other ADA claims fail – he has not established that he meets the statutory definition of disabled.

To the extent that the claims in Count 4 are grounded in negligence, the court applies West Virginia law.

Under West Virginia law, claims of negligent training and supervision are governed by general negligence principles. See Pruitt v. W. Va. Dep't of Pub. Safety, 664 S.E.2d 175, 179, 181–83 (W. Va. 2008) (allowing claims of negligent failure to train and supervise to proceed to trial); Neiswonger v. Hennessey, 601 S.E.2d 69, 73, 73 n.3 (W. Va. 2004) (recognizing negligent hiring, training, and supervising as a cause of action grounded in state law and distinct from claims asserted under § 1983); Taylor v. Cabell Huntington Hosp., Inc., 538 S.E.2d 719,

725 (W. Va. 2000) ("The appellant's claim of negligent supervision must rest upon a showing that the hospital failed to properly supervise [an employee] and, as a result, [that employee] committed a negligent act which proximately caused the appellant's injury.").

Here, the plaintiff has offered no facts to support the contention that Colonel Smithers negligently trained or supervised Trooper Demaske.  In fact, in the deposition of the plaintiff, when asked if he knew why he sued Colonel Smithers, or if he knew anything that Colonel Smithers did to harm him, the plaintiff responded, "I don't know who Jay Smithers is.  I don't know what you're talking about."  Pl.'s Dep., ECF No. 69-1, at pp. 8-9.  Additionally, the plaintiff stated that he was not aware that he had sued Trooper Demaske, but that "If I sued [Trooper Demaske], it's probably over harassment."  Id. at 9.  However, the plaintiff could not recall anything that Trooper Demaske had done to harass him.  Id. at 9-10.  The plaintiff also admitted that he knew nothing about Trooper Demaske's training.  Id. at 33.

There is a total absence of evidence regarding Trooper Demaske's training or Colonel Smithers's supervision of Trooper Demaske.  For these reasons, Colonel Smithers is entitled to

summary judgment on the negligent supervision and training claims in Count 4.

### C. Section 1983 claims against Colonel Smithers in Counts 5 and 12 arising from the May 22, 2015 arrest

In Count 5, the plaintiff brings a claim against Colonel Smithers and Trooper Demaske for a violation of § 1983 under the Fourth and Fourteenth Amendments for the May 22, 2015 DUI arrest.  In Count 12, he brings a § 1983 retaliation claim against those same defendants under the First and Fourteenth Amendments for that same arrest.

While the plaintiff stated in his deposition that he did not know who Colonel Smithers was, the First Amended Complaint only states that Colonel Smithers, among others, "failed to . . . provide reasonable accommodations; create policies or procedures; and properly train employees and staff to prevent the Plaintiff from being discriminated against based upon his disabilities."  Compl., ECF No. 30, at ¶ 61.  Thus, it appears that the plaintiff is suing Colonel Smithers in Counts 5 and 12 for supervisory liability.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556
U.S. 662, 676 (2009).  Supervisory liability may be established
against a defendant for § 1983 claims.  <u>See Shaw v. Stroud</u>, 13
F.3d 791, 799 (4th Cir. 1994).

The Fourth Circuit has set forth the elements that a
plaintiff must meet to establish supervisory liability under §
1983:

> (1) that the supervisor had actual or constructive
> knowledge that his subordinate was engaged in conduct
> that posed 'a pervasive and unreasonable risk' of
> constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge
> was so inadequate as to show "deliberate indifference
> to or tacit authorization of the alleged offensive
> practices"; and (3) that there was an "affirmative
> causal link" between the supervisor's inaction and the
> particular constitutional injury suffered by the
> plaintiff.

<u>Id.</u>

Here, the plaintiff cannot meet the first element.
The plaintiff has presented no evidence, testimony, or even an
allegation to suggest that Colonel Smithers knew about any
actions taken by Trooper Demaske.  <u>See</u> Pl.'s Dep., ECF No. 69-1,
Ex. A, at p. 8-9.

Further, to the extent that Colonel Smithers is being
sued in these counts in his official capacity, those claims are
more properly classified as suits against the entity – in this
case, the State of West Virginia – which is not a "person" under

§ 1983.  See <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.")).

For these reasons, Colonel Smithers is entitled to summary judgment on the § 1983 claims against him in Counts 5 and 12.

D. Count 13 (§ 1983 retaliation claim arising from the January 15, 2016 arrest).

Count 13 asserts a § 1983 retaliation claim under the First and Fourteenth Amendments against Trooper McFeeley for the January 15, 2016 arrest.  The plaintiff contends that when Trooper McFeeley arrested him on this date for burglary, destruction of property and providing false information to the police, that it was done in retaliation for his filing the original complaint in this lawsuit.  See Compl., ECF No. 30, at 21.  Trooper McFeeley asserts that he is entitled to qualified immunity for the January 15, 2016 arrest.

It is well established that government officials are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

Qualified immunity provides police officers with "'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" **Hunter v. Bryant**, 502 U.S. 224, 229 (1991) (quoting **Malley v. Briggs**, 475 U.S. 335, 341 (1986)). Officers "are not liable for bad guesses in gray areas," but "they are liable for transgressing bright lines." **Maciarello v. Sumner**, 973 F.2d 295, 298 (4th Cir. 1992).

In determining whether an officer is entitled to qualified immunity, the court "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." **Melgar v. Greene**, 593 F.3d 348, 353 (4th Cir. 2010) (citing **Pearson v. Callahan**, 555 U.S. 223, 241 (2009); **Saucier v. Katz**, 533 U.S. 194 (2001)).

"The Supreme Court 'has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause.'" **Pegg v. Herrnberger**, 845 F.3d 112, 119 (4th Cir. 2017) (quoting **Reichle v. Howards**, 566 U.S. 658, 666 (2012).

It is Trooper McFeeley's contention that inasmuch as he had probable cause to arrest the plaintiff on January 15, 2016, he is entitled to qualified immunity for the § 1983 claim

which arises out of that arrest.  State Defs.' Mem., ECF No. 74, at 13-15.

The Fourth Amendment permits a police officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect committed a felony.  United States v. Watson, 423 U.S. 411, 417 (1976).  That officer may even make the arrest if the felony was not committed in the officer's presence.  Id. at 418.  Burglary is a felony offense in West Virginia.  W. Va. Code § 61-3-11(a).

The Court of Appeals for the Fourth Circuit has explained that "[a]n officer has probable cause for arrest when, at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense."  United States v. Manbeck, 744 F.2d 360, 376 (4th Cir. 1984).

The only evidence provided by either party regarding the January 15, 2016 arrest is the deposition of the plaintiff. While it is difficult to discern the plaintiff's version of events based on his testimony, it appears that the incident proceeded in the following fashion.

On what appears to have been January 15, 2016, Mr. Pearson, a neighbor of the plaintiff, kicked in the plaintiff's door in the tenant building where plaintiff lived, and Trooper McFeeley responded to the incident.  Pl.'s Dep., ECF No. 69-1, at p. 10-11.  The plaintiff told Trooper McFeeley that he was the manager of the property, while the owner, an eighty-eight-year-old man who the plaintiff suggested often becomes confused, conversely said that he was the manager.  Id. at 13.  The plaintiff also stated that he had the keys, collected rent and did repairs at the building for the owner.  Id.

Additionally, the plaintiff acknowledges that Mr. Pearson had reported that the plaintiff had taken property out of his apartment.  Id. at 15.   The plaintiff denied having taken property, but he did admit to letting someone else into the Pearson apartment sometime between 10:00 and 11:00 p.m., presumably that same day, to remove items from it.  Id. at 16. According to the plaintiff's testimony, the man the plaintiff let into Mr. Pearson's apartment, Mr. Sizemore, was the father of another individual living in that same Pearson apartment, and the father only took clothes that belonged to his son.  Id. According to the plaintiff's testimony, Mr. Pearson may have told police that the plaintiff let Mr. Sizemore into the apartment and that Mr. Sizemore stole Mr. Pearson's personal

property.  Id. at 19.  It is not shown in the record whether the plaintiff communicated any of these circumstances to Trooper McFeeley.

Even if the plaintiff was the manager of the property, he would not have had permission to unlock another tenant's apartment and allow someone to remove personal property belonging to that tenant without permission.  From the information it seems Trooper McFeeley received, the plaintiff let another man into the apartment of a resident at the tenant house to take personal property from that apartment.  A reasonable and prudent officer could have found probable cause to arrest the plaintiff for burglary.

For these reasons Trooper McFeeley is entitled to qualified immunity, and accordingly, his motion for summary judgment as to plaintiff's § 1983 retaliation claim in Count 13 is granted.

In further support of this conclusion, the State Defendants note that the plaintiff has not set forth any evidence, other than his own belief, that Trooper McFeeley was retaliating against him for the filing of the original complaint in this lawsuit.  State Defs.' Mem., ECF No. 74, at 13 (citing Pl.'s Dep., ECF No. 69-1, Ex. A, at p. 27-29).  Further, the plaintiff is deemed to have admitted that Deputy Belt did not

retaliate against him by communicating to other officers to arrest the plaintiff.  See ECF Nos. 64-65.

   E.  Count 8 (state law wrongful arrest claim for the January 15, 2016 arrest)

In Count 8, the plaintiff brings a state law wrongful arrest claim against Trooper McFeeley for the January 15, 2016 arrest just described in Section III.D.

"[T]he gist of the action for false imprisonment [also called false arrest] is illegal detention of a person without lawful process or by an unlawful execution of such process." Riffe v. Armstrong, 477 S.E.2d 535, 549 (W. Va. 1996).

For the same reasons stated above, Trooper McFeeley's arrest of the plaintiff on January 15, 2016 was supported by probable cause.  Accordingly, the plaintiff was not detained without lawful process and Trooper McFeeley is entitled to summary judgment on Count 8.

**F. Count 16 (IIED)**

The only remaining claims for IIED against the State Defendants arise out of the May 22, 2015 and January 15, 2016 arrests by Trooper Demaske and Trooper McFeeley, respectively.

The Supreme Court of West Virginia has set forth the elements necessary to plead IIED:

> (1) That defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) That the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) That the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) That the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Philyaw v. E. Associated Coal Corp., 633 S.E.2d 8, 13 (W. Va. 2006) (quoting Syllabus Point 3, Travis v. Alcon Labs., 504 S.E.2d 419 (W. Va. 1998)). Courts are to play a "gate-keeping" role in determining whether, as a matter of law, asserted conduct could reasonably satisfy the element of "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." Id. Conduct which is merely "unreasonable, unkind or unfair" is insufficient to state a claim for IIED. Id. at 258.

Trooper McFeeley claims that he is entitled to summary judgment on this claim inasmuch as the plaintiff has "failed to

provide any details that show Defendant McFeeley engaged in 'intentional, extreme, or outrageous' conduct." State Defs.' Mem., ECF No. 74, at 16. He is correct. Executing the January 15, 2016 arrest of the plaintiff when he had probable cause to do so cannot be said to be conduct by Trooper McFeeley that exceeds the bounds of decency. He is therefore entitled to summary judgment on Count 16 as it relates to the January 15, 2016 arrest.

As mentioned above, inasmuch as there are no specific factual allegations pled as to Colonel Smithers's conduct, and the plaintiff does not even know who Colonel Smithers is, it appears that he is being sued in connection with the actions of his employees – Trooper Desmaske on May 22, 2015 and Trooper McFeeley on January 15, 2016. Colonel Smithers asserts that the plaintiff has failed to establish supervisory liability and refers in support to the standards for establishing supervisory liability in § 1983 claims. State Defs.' Mem., ECF No. 74, at 17-18 (citing Shaw, 13 F.3d at 799). While this standard is not expressly applicable to state law claims of IIED, the court need not evaluate such arguments inasmuch as the plaintiff has failed to demonstrate that either of Colonel Smithers's subordinates engaged in outrageous conduct.

First, since there is no surviving IIED claim against Trooper McFeeley, there can be no claim for supervisory and training liability for IIED against Colonel Smithers arising out the January 15, 2016 arrest.

Next, the plaintiff has presented absolutely no evidence or testimony regarding the circumstances of the May 22, 2015 arrest or any of the actions of Trooper Demaske during that arrest.  The plaintiff also admitted that he knew nothing about Trooper Demaske's training.  In light of these factors, an IIED claim for supervisory and training liability against Colonel Smithers cannot survive his motion for summary judgment.

Accordingly, the State Defendants are entitled to summary judgment on the IIED claims against them arising out of the May 22, 2015 and January 15, 2016 arrests.

G. Remaining claims against Trooper Demaske

At this point, the only claims against any defendant remaining in this matter are those against Trooper Demaske in Counts 2, 5, 7, 12 and 16, each of which arises out of the DUI arrest by Trooper Demaske and two other troopers not sued, on

May 22, 2015,[3] when plaintiff was also found driving left of center and without insurance.  The court reiterates that in his deposition, when the plaintiff was asked why he sued Trooper Demaske, he responded "Didn't know that I did."  Pl.'s Dep., ECF No. 69-1, Ex. A, at p. 9.  When asked if he could think of anything Trooper Demaske had done that would justify suit against him, the plaintiff said, "If I sued him, it's probably over harassment."  Id.  However, the plaintiff stated that he could not recall how Trooper Demaske harassed him.  Id. at p. 9-10.

As set forth above, inasmuch as the plaintiff has not established that he is disabled, plaintiff's claim for discrimination and failure to provide reasonable accommodations under Title II of the ADA and Rehabilitation Act in Count 2 cannot stand against any party, including Trooper Demaske.

Further, the § 1983 claims for wrongful arrest and retaliation in Counts 5 and 12, the state law wrongful arrest claim in Count 7 and the IIED claim in Count 16, each of which arises out of the May 22, 2015 DUI arrest, fail because the

---

[3] As noted above, service has still not been perfected against Trooper Demaske, despite the plaintiff's being made aware of this fact in the court's March 21, 2018 memorandum opinion and order on the State Defendants' motion to dismiss.  ECF No. 76, at 8.

plaintiff could not describe or even name any action, let alone
unlawful action, taken by Trooper Demaske beyond plaintiff's
speculation that, "If I sued him, it's probably over
harassment."

Accordingly, the claims against Trooper Demaske are
dismissed with prejudice.

## IV.    Conclusion

For all of the foregoing reasons, it is ORDERED that
the State Defendants' motion for summary judgment be, and it
hereby is, granted.  It is further ORDERED that all claims
against Trooper Demaske be, and hereby are, dismissed with
prejudice.

The Clerk is directed to transmit copies of this
memorandum opinion and order to all counsel of record and any
unrepresented parties.

Enter: April 15, 2019

John T. Copenhaver, Jr.
Senior United States District Judge